MAMIE PETERSON, APPELLEE, v. MAYME HEDRICK CLEAVER ET AL., APPELLANTS.

FILED DECEMBER 23, 1920. No. 21090.

1. **Libel: PRIVILEGED COMMUNICATIONS.** When a publication is made by a chief officer of a fraternal insurance association, addressed to the members of the association, concerning a subject-matter which affects the general welfare of the association, such communication, although containing words which are libelous *per se*, is qualifiedly privileged, and is a complete defense unless it is shown by plaintiff by a preponderance of the evidence that the publication was made with express malice.

2. **Insurance: FRATERNAL ASSOCIATIONS: LIABILITY FOR LIBEL.** A fraternal beneficiary association, organized under the laws of this state without capital stock, is liable to a member of such association for libel published by its officers, acting within the scope of their authority and in the discharge of its business.

3. **Libel: LIBELOUS PUBLICATION: LIABILITY OF AUTHOR.** The author of an article which is libelous, and which is published at his instance,

is liable with the publisher in an action brought by the person defamed.

4. ———: INSTRUCTIONS. Instructions examined, and *held* to be without error to the appellant.

5. ———: EXPRESS MALICE: EVIDENCE. Evidence examined, and *held* sufficient to submit to the jury the question of express malice.

6. Evidence examined, and *held* to sustain the verdict.

APPEAL from the district court for Douglas county: LEE S. ESTELLE, JUDGE. *Affirmed.*

*Matthew Gering, William J. Hotz* and *Stiner & Boslaugh,* for appellants.

*Anson H. Bigelow* and *Weaver & Giller, contra.*

DAY, J.

The plaintiff recovered a judgment in the district court for Douglas county for $1,500 against the defendants in an action for libel. Defendants have appealed.

The defendant, the Degree of Honor of the state of Nebraska, is a fraternal organization doing a fraternal insurance business, having also social features, and composed of a grand lodge with subordinate lodges. It is a corporation organized under the special provisions of our statute relating to fraternal benefit societies.

At the time in question the defendant, Mayme Hedrick Cleaver, held the post of Grand Chief of Honor, which was the chief executive office of the society. The Degree of Honor owned and controlled a paper known as the Degree of Honor Journal, which was the official organ of the society, in which were published communications from the officers to the members, as well as news items of special interest to the membership. This paper circulated only among the members and a few of its advertisers.

Among the subordinate lodges of the association was Washington Lodge No. 27, located at Omaha, in which the plaintiff held the position of financier. As such officer it was the duty of the plaintiff to collect dues and assessments from the several members of lodge No. 27, and turn

the money so collected over to the treasurer of such lodge, for which service she was paid four cents *per capita.*

As the outgrowth of some difficulties in the affairs of lodge No. 27, reference to which will be hereinafter made, Mrs. Cleaver, as Grand Chief of Honor, prepared and had published in the Degree of Honor Journal the article which forms the basis of this action. The communication is quite lengthy, and we set out only that portion of which complaint is made, ommitting innuendoes: "The financial affairs of the order were 'placed in the hands of John M. Gilchrist, certified public accountant, who found the treasurer's books $1,266 short, and the financier's not only short, but in such condition that more than 140 members were suspended during the time between December 28th and March 7th, who did not know of nor suspect their suspension. The former treasurer of the lodge has assisted in every way possible to straighten out the affairs of the order, and has promised to make good her shortage, but the former financier has not only refused to assist in straightening out her books, but has persisted in communicating with and collecting assessments and dues from the members, and has also tacitly refused to make good her shortage. I have issued three official letters. In my last I explained that from and after May 13th any member who paid assessments to any one excepting those whom I had designated would be suspended individually. According to the expert accountant's report, Washington Lodge No. 27, suspended, was paying a salary to the financier computed on a basis of 739 members, while in fact they actually had only 569 members. If the plaintiffs in this case had met with the overtures of the grand lodge officers this might all have been amicably settled by April 1st, and it is earnestly to be hoped that better judgment will prevail very soon."

The petition avers that the article charges that plaintiff was short in her accounts as financier of her lodge, and also that she was receiving a salary based upon a *per capita* membership of 739, while in fact the lodge had but

569 members.   The petition also contained the usual averments in actions for libel.

The answers of the defendants admitted the preparation and publication of the article in the Degree of Honor Journal, the official organ of the order, and by way of defense pleaded that it was a privileged communication, and made without malice or ill will, and made only for the purpose of informing all of the members of the conditions existing in the order.   The answers also pleaded that the article was true and published with good motives and for justifiable ends.   The reply denied the affirmative allegations of the answers.

In this state of the record the trial court, correctly we think, ruled that the article was libelous *per se*, and permitted evidence to be introduced as to the damages the plaintiff had sustained.   There being no dispute in the testimony as to the occasion of the publication, the court ruled that it was qualifiedly privileged, and that the qualified privilege was a complete defense unless the plaintiff established by a preponderance of the testimony that the publication was made with express malice.

We think the theory upon which the case was tried was the proper one, in harmony with the evidence and supported by the law.

In the brief for defendants it is urged that the publication was privileged, and hence a complete defense.   The word "privileged," as applied to libel, is a general term. For the sake of clearness of application it is often·divided into two classes, viz., absolute privilege and conditional or qualified privilege.   Townsend, in his work on Slander and Libel (4th ed.) sec. 209, says:

"By an absolutely privileged publication is not to be understood a publication for which the publisher is in no wise responsible, but it means a publication in respect of which, by reason of the occasion upon which·it is made, no remedy can be had in a civil action for slander or libel.   A conditionally privileged publication is a publication made on an occasion which furnishes a *prima facie* legal excuse

for the making of it; and which is privileged, unless some additional fact is shown which so alters the character of the occasion as to prevent it furnishing a legal excuse. The additional fact which, in the majority of cases, is required to be shown to destroy this conditional privilege is malice, meaning bad intent in the publisher, *i. e.,* an intent to injure the person whom or whose affairs the language concerns."

Newell, Slander and Libel (3d ed.) sec. 496, states the rule as follows: "A communication made in good faith upon any subject-matter in which the party communicating has interest or in reference to which he has a duty, either legal, moral, or social, if made to a person having a corresponding interest or duty, is qualifiedly privileged, and the burden of proving the existence of malice is cast upon the person claiming to have been defamed." *Wise v. Brotherhood, L. F. & E.,* 252 Fed. 961; *Finley v. Steele,* 159 Mo. 299. Tested by this rule, it is clear that the defendants would be protected in making the publication, provided that in so doing they did not act maliciously.

But it is urged on behalf of defendant the Degree of Honor that an action for libel will not lie against it at the instance of one of its members. It is pointed out that it is a corporation organized under special provisions of our statute authorizing fraternal societies to be created without capital stock, and privileged to insure its members, and to conduct its business for the sole benefit of the members. It is argued that such organizations can hardly be classed as corporations or copartnerships. We are not willing to assent to this proposition.

Notwithstanding the fact that it is organized under special provisions of the statute, without capital stock, it is none the less a corporation, having a distinct entity, apart from its members. It is an artificial person created by statute, in which capacity it may sue and be sued. The mere fact that it does not make dividends for its members, or that there may not be funds out of which a judgment could be paid, does not, in our judgment, exempt it from

being sued. A libel is a wrongful act, a tort, and there seems to be no good reason why a corporation of this character should not respond in an action for libel brought by one of its members, the same as in any other tort.

The cases cited by counsel for either side are hardly to the point now being considered. Neither has our considerable research been rewarded in finding one. In *Gilbert v. Crystal Fountain Lodge*, 80 Ga. 284, it was held that a member of a mutual aid association cannot maintain an action against the association, sued as a partnership, for slanderous words spoken of and concerning him by the association while a member of it. In discussing the question the court said:

"After diligent search, we have been unable to discover any authority supporting the theory that a man can slander himself, either when he speaks directly as an individual; or when he speaks indirectly through a partnership of which he is a member. Upon principle, we do not see how he could charge the partnership assets with the damages that might be recovered, he having an interest in the assets as a part owner of the same."

In *De Sénacour v. Société La Prévoyance*, 146 Mass. 616, the case was decided upon the point that there was no evidence of publication by the society. In *Holmes v. Royal Fraternal Union*, 222 Mo. 556, 26 L. R. A. n. s. 1080, a communication containing libelous matter was written by the president of a fraternal order to members at a certain place concerning the plaintiff who was also a member. The case was decided upon the point that the communication was qualifiedly privileged, and that there was not sufficient evidence to show express malice. In *Wise v. Brotherhood, L. F. & E.*, 252 Fed. 961, the plaintiff was a member of the brotherhood. The secretary of the defendant organization wrote the libelous letter which formed the basis of the suit, in which the plaintiff was nonsuited. The defense was that the communication was privileged. The judgment was reversed for the reason that the court failed to submit the question of malice to the jury. In *Kirkpatrick*

*v. Eagle Lodge,* 26 Kan. 384, it was held that the sustaining of a demurrer on the ground that the petition did not state a cause of action was error. In these cases, as well as others which might be cited, it was assumed rather than decided that an action by a member would lie against the association, when the association was a corporation.

We do not understand counsel for the defendant to challenge the general rule that a corporation is liable in an action for libel committed by its authorized agents while acting within the scope of their employment. Numerous cases are readily found supporting this general proposition. Newell, Slander and Libel (3d ed.) 436; *Evening Journal Ass'n v. McDermott,* 44 N. J. Law, 430; 17 R. C. L. 382, sec. 134; Odgers, Libel and Slander, p. 592; *Johnson v. St. Louis Dispatch Co.,* 65 Mo. 539; *Aldrich v. Press Printing Co.,* 9 Minn. 123.

This court, while not passing in terms upon the question, has recognized the liability of corporations in actions for libel. *Bee Publishing Co. v. Shields,* 68 Neb. 750, 759; *Bee Publishing Co. v. World Publishing Co.,* 59 Neb. 713; *Estelle v. Daily News Publishing Co.,* 101 Neb. 610.

In the case at bar it is clear that in making the publication Mrs. Cleaver was acting as the chief officer of the Degree or Honor. Her acts were within the scope of her powers as such officer. She was acting for it in its affairs, and for its benefit. The Degree of Honor cannot be excused upon the ground that she exceeded her authority. Perhaps in no case do corporations or individuals author ize their agents to commit torts, and yet they are held answerable for the acts of their agents while acting within the scope of their employment, and while engaged in the furtherance of the master's business.

The questions then arise whether there was sufficient evidence of malice to be submitted to the jury, and whether the evidence is sufficient to support the verdict. The record shows that dissensions of a serious nature had arisen in the affairs of Washington Lodge No. 27, which became so accute as to threaten disruption of the lodge. At this

stage of the disorder, Mrs. Cleaver appeared at a meeting of the lodge, and, in the exercise of her power as Grand Chief of Honor, placed herself in the presiding officer's chair and announced that she suspended lodge No. 27 "for insubordination on the part of your financier for not sending out those cards." She ordered the charter taken from the wall, and appointed temporary officers to take the place of the regularly elected officers of the lodge, and directed that the books, records, and funds be turned over to the newly appointed officers. Plaintiff, who was present with her books and records, refused to turn her books over until they were audited. There is a dispute in the testimony as to what occurred. The plaintiff's testimony was to the effect that, upon plaintiff's refusal to give up her books, Mrs. Cleaver "run across from the station and shook her fist at me," and said, "Mrs. Peterson, I have put up with you for six years, turn those books over or I will have a policeman accompany you home." Another witness testified, "She (Mrs Cleaver) was shaking her fist at her, and said, 'Well, we will get you.' " Other testimony of a similar import was offered. Following this episode, the plaintiff surrendered her books, records, and cash. Later plaintiff and other members of the lodge joined in court action to prevent interference on the part of defendant Mrs. Cleaver in the affairs of lodge No. 27. While the trans-actions occurring in the lodge, just alluded to, were denied on the part of the defendants, we think the testimony on the question of malice was clearly within the province of the jury to determine. Following these several difficulties the article in question was prepared by Mrs. Cleaver, signed by her in her official capacity, and ordered published in the official organ as a communication to the members.

Under all the circumstances, we think the testimony on the question of express malice was properly submitted to the jury, and that the verdict of the jury is sustained by the evidence.

The defendants urge that there was error in the giving of instructions Nos. 2, 3, 4, and 7. Instructions Nos. 4 and 7 are in identical language, respectively, as instructions 9 and 7 requested by the defendants. Having requested these instructions, they are in no position to now complain.

Instruction No. 2 is as follows: "Unless you find from the evidence that the libelous matter was true and published with good motives and for justifiable ends, or you fail to find that the libelous matter was a privileged communication, as hereinafter defined, then your verdict should be for the plaintiff; but, if you find the libelous matter was true, or find that it was a privileged communication, then your verdict should be for the defendants." There is nothing in this instruction which gives the defendants ground to complain. The first part is based upon section 5, art. I of our Constitution, which provides: "In all trials for libel, both civil and criminal, the truth when published with good motives, and for justifiable ends, shall be a sufficient defense." The latter part of the instruction, "but, if you find the libelous matter was true, * * * then your verdict should be for the defendants," is perhaps faulty in not adding, following the word "true," "and was published with good motives, and for justifiable ends." The instruction given affords the defendants no ground for complaint, for it was more favorable to them than they were entitled to receive.

The defendants also complain of the giving of instruction No. 3. This instruction in substance charged that the members of the order had the right to know how the affairs of each lodge were being conducted, and that defendant, through its official organ, had the right to give such information to the several members, and that if, when the article was published, the defendants believed, or had reasonable ground to believe, that the statements therein were true, then and in such event the defendant would not be liable to the plaintiff in any sum whatsoever, unless the plaintiff has established by a preponderance of the testimony that the publication was made with express malice.

This instruction is responsive to the facts, and is in no wise prejudicial to the defendants.

There are other errors complained of in the briefs which will not be considered further than to say that we have examined them carefully, and do not find any prejudicial error to the appellants.

The judgment of the district court is accordingly

AFFIRMED.

ROSE, J., not sitting.