JUDITH HALL, APPELLEE, V. LAWRENCE R. RICE ET AL., APPELLANTS.

FILED JANUARY 16, 1929. No. 26161.

814

*Montgomery, Hall, Young & Johnsen,* for appellants.

*George Evens* and *Thomsen, Mossman & Standeven,* contra.

Heard before GOSS, C. J., ROSE, THOMPSON and EBERLY, JJ., and REDICK and STALMASTER, District Judges.

REDICK, District Judge.

The plaintiff brings this action against the defendants, Lawrence R. Rice and Louis K. Liggett Company, a cor-

poration, and sets forth in her petition two causes of action, one for false imprisonment and one for slander. Plaintiff was in the employment of the defendant company as manager of the candy department, and defendant Rice was general manager of the drug store.

For her first cause of action, plaintiff alleges that she entered the employ of the defendant company about June 15, 1926, and continued such employment until November 12 following, when she was discharged; that on November 12 she was called from the store to the office and accused of stealing money, that she was forcibly detained in the office, and by threats and intimidation compelled to sign a confession to the effect that she had made a sale in the amount of $2.51 and rung up on the register only 51 cents, had taken $1 from the register for her own purposes, and had, during her employment, taken money of the company in different amounts averaging about $3 a day, a total of $350; that defendants had reported such defalcation to the insurance company who had plaintiff's fidelity bond, in consequence of which she had been blacklisted and unable to obtain work, and alleged damages of $10,000.

For her second cause of action, she alleged that the defendants, wrongfully and wilfully and with the purpose of injuring plaintiff in her character and standing in the community, stated to the other clerks in the store that plaintiff had embezzled money belonging to defendant company and had signed a written confession to that effect; that defendant Rice uttered said slander with full knowledge that the same was untrue and that the confession had been secured by threats and coercion, and asks damages of $15,000.

In separate answers, the defendants answered the first cause of action and denied each allegation thereof except the employment of plaintiff and the forwarding of notice of the defalcation to the bonding company. Defendants further allege that on November 12, 1926, plaintiff was observed to make a cash registration of only 51 cents on a $2.51 sale in her department, and upon being asked for

an explanation admitted the facts set forth in the confession, and made the same voluntarily without any coercion on the part of any one; that plaintiff actually made misappropriations of money, as admitted by her, and that notice to the bonding company was an act which defendant had a legal right to do.

In answer to the second cause of action, defendants denied each and every allegation not specifically admitted, alleged the facts with reference to the register, misappropriation and confession as stated in the answer to the first cause of action, and after the signing of the confession, defendant informed plaintiff's coworkers and fellow employees thereof, and that such communication was made in good faith, in the interest of the integrity of the business and of plaintiff's fellow employees, without malice, for justifiable purposes and with an actual belief in its truth; and that the making of such communication was privileged under all the circumstances.

In reply plaintiff filed a general denial.

The cause was tried and submitted to a jury, which returned a verdict for the plaintiff in the sum of $5,000. Motions for new trial were overruled, judgment rendered on the verdict, and defendants appeal.

Defendants file eight assignments of error as ground for reversal, three of which we will consider.

1. Exception is taken to that portion of instruction No. 12 on the measure of damages upon the cause of action for false imprisonment, to the effect that the jury should take into consideration "whether or not the defendants acted maliciously in the premises. Whether defendants acted maliciously, however, is immaterial to her cause of action for any false imprisonment, except in so far as, in your opinion, it may affect the extent of her damages." The point made is that by this instruction the jury were permitted to assess punitive damages against the defendants if they found that they acted maliciously. The instruction is erroneous. Malice, as stated, was no part of the cause

of action for false imprisonment, and to authorize that element to enter into the assessment of the damages had a tendency to permit the jury to assess the same at a sum in excess of just compensation. It is true that in closing the instruction the court told the jury that they could not allow exemplary or punitive damages, but this was inconsistent with the previous statement, and we are not able to say which statement was adopted by the jury. In 25 C. J. 545, it is said: "Evidence as to malice is ordinarily inadmissible (in a false imprisonment action), malice not being an element of the cause of action. But evidence of good faith importing a lack of malice is admissible for the purpose of obviating or mitigating exemplary damages." The latter part of the text quoted has no application in this state because punitive or exemplary damages are not allowed, unless by express statute in certain cases, in which false imprisonment is not included.

The plaintiff cites on this point *Johnson v. Bouton,* 35 Neb. 898, in which syllabus 3 is as follows: "The question of malice in an action for false imprisonment is immaterial, except so far as it affects the measure of damages." The case in question is not controlling for two reasons: (1) The question arose from the refusal of the trial court to instruct the jury that the plaintiff must prove that the original prosecution was without probable cause and was malicious, and the court approved the refusal, stating: "False imprisonment is the unlawful detention of the injured party"—and then added the matter quoted in the syllabus above, citing *Comer v. Knowles,* 17 Kan. 436. This last expression was not necessary to the determination of the question presented to the court. (2) Under the laws of Kansas at the time of the decision cited, punitive and exemplary damages were allowed.

2. Exception is taken to instructions Nos. 13 and 15, given by the court on its own motion, as follows:

"13. With regard to the plaintiff's second cause of action, *i. e.* her claim for damages on account of slanderous statements claimed to have been made by the defendants,

the defendants in this action allege substantially as a defense that the plaintiff on November 12, 1926, misappropriated money from the cash register and that she had previously during the time of her employment misappropriated other moneys of the defendants. The burden of proof rests upon the defendants to prove these allegations by a preponderance of the evidence. * * * If they have failed to prove either of these allegations by a preponderance of the evidence, then it will be your duty to return a verdict for the plaintiff for the amount in which you find she has been damaged because of these statements made by the defendants."

"15. If you find the plaintiff did not at any time take or misappropriate any money belonging to the defendant company, then the defendant Rice would not be justified in stating to the employees of the store that the plaintiff had taken money of the company or that she had confessed to having taken money of the company."

The objection to these instructions is that they omit all reference to the question of the privileged character of the communication, predicating liability of defendants solely upon the determination of the question whether or not plaintiff had in fact embezzled money of defendant company. Defendants contend that, where the communication complained of is one of qualified privilege, defendants cannot be made liable therefor, unless the plaintiff proves by a preponderance of the evidence that the slanderous communication was made with express malice; that if defendants had an honest belief in the truth of the statements made by them, and such belief was founded upon facts reasonably inducing it, the defendants are not liable, even though the statements were false in fact. We think the point is well taken. That the communication was one of qualified privilege is beyond dispute. It dealt with a matter in which defendant and its employees had a mutual interest. The cash registers in the store were used by all of the employees, at one time or another, and each employee had a personal interest in the honesty of every other, for if

one is dishonest suspicion may be cast upon all. The defendants were interested in the integrity of the business and in protecting their employees from unwarranted criticism in the performance of their duties. The rule is succinctly stated in *Wise v. Brotherhood of Firemen and Enginemen,* 252 Fed. 961: "A communication is privileged if made *bona fide* by one who has an interest in the subject-matter to one who also has an interest in it or stands in such relation that it is a reasonable duty, or is proper, for the writer to give the information." This statement of the rule was approved in *Peterson v. Cleaver,* 105 Neb. 438, in which it was also held that a communication which is qualifiedly privileged, though it contain words which are libelous *per se,* is a complete defense to an action for libel, "unless it is shown by plaintiff by a preponderance of the evidence that the publication was made with express malice." See *Nichols v. Eaton,* 110 Ia. 509; *Harrison v. Garrett,* 132 N. Car. 172; also *Livingston v. Bradford,* 115 Mich. 140, which quotes with approval the remark of Baron Parke: "If such communications are fairly warranted by any reasonable occasion or exigency, and honestly made, such communications are protected by the common convenience and welfare of society, and the law has not restricted the right to make them within any narrow limits."

In *Estelle v. Daily News Publishing Co.,* 99 Neb. 397, the fourth syllabus is as follows: "A defendant is not liable for publishing privileged communications unless there was actual malice on his part, and such malice must appear before there can be a recovery. If, however, the statements published are false, and libelous *per se,* malice is presumed, and the burden is upon the defendant to prove that the evidence of the truth of the statements was such as would justify him in making them, and that he did so in good faith, believing them to be true." And in the opinion, page 400, it is said:

"One who publishes of a candidate for office a statement relating to the candidate's qualifications and fitness for the office is not liable in damages if the statement was true

and was made with good motives and for justifiable ends, although such statement is libelous *per se*. If the statement is untrue in fact, the burden is upon the party who makes it to prove, not only that he in good faith believed the truth of the statement, but that he had evidence sufficient to justify a reasonable man in belief of its truth."

There is an apparent conflict between this statement of the rule and that in *Peterson v. Cleaver, supra,* but we think it is only apparent. The latter case merely states the rule, while the former states the legal presumption as a sufficient compliance therewith, unless it is met by evidence of the defendant that he in good faith believed the truth of the statement and that he had evidence sufficient to justify a reasonable man in belief of its truth. In this state it is too well established for discussion that the burden of proof never shifts, that where it is rightly placed upon one party it continues there until the end of the trial. It not infrequently happens that the words "burden of proof" are used to express the idea that, after a *prima facie* case is made by the party having the burden, it is then incumbent upon the other party to produce proof to meet the case so made; but such employment of those words is inaccurate. The word "burden" when used with reference to proof has attained a special significance in law, indicative of a requirement that the party upon whom it is cast must prove the fact in question by a preponderance of the evidence; its use, therefore, to express the idea merely that evidence must be produced to meet a *prima facie* case made is inaccurate. The use of the word "burden" as applied to the defendant in syllabus 4 in the *Estelle* case was unhappy, and is inconsistent with the first paragraph thereof, which implies that the burden of proving malice is upon the plaintiff, as positively held in *Peterson v. Cleaver, supra.* Having thus stated the rule, it is confusing to place the burden of proving the nonexistence of malice upon the defendant. A more accurate statement would be: "If, however, the statements published are false, and libelous *per se,* malice is presumed, and the defendant is then re-

quired to produce evidence sufficient to meet or overcome the presumption, to the effect that evidence of the truth of the statements was such as would justify him in making them, and that he did so in good faith, believing them to be true." We think, moreover, that the word "burden" as used in the syllabus and opinion should be understood as meaning "incumbent upon" or "duty." The presumption merely furnishes a rule of evidence which is sufficient until balanced or overcome by evidence upon the part of the defendant. Whether or not the evidence was sufficient in the present case to defeat the action was a question for the jury and should have been submitted to them by a proper instruction.

Plaintiff, however, invokes the well-established rule that, in order to present for review the failure of the trial court to instruct the jury upon particular issues or evidence in a case, the party complaining must have requested instructions on the omitted topic, citing a number of cases from this state. We have examined those cases and all present a failure to instruct on some particular feature of the case. In one of them it is said: "It is not contended that any of the instructions misstated the law, but the complaint is they omitted certain features of the case upon which the jury should have been instructed, both in stating the issues and the law applicable thereto." *Carter White Lead Co. v. Kinlin*, 47 Neb. 409. The case here presents a different situation. It is not merely a case of omission, but one of commission. The complaint is that the instructions above quoted misstated the law as applied to the case on trial, that it is not a correct statement in a slander case involving the question of privilege, that liability may be predicated by the jury solely upon the falsity of the statement complained of without reference to the question of privilege. That question was properly included in the statement of the pleadings, but was ignored by the instructions which purported to cover all matters necessary for plaintiff to prove. We think the rule contended for is not applicable.

3. The last assignment of error to which we will refer has to do with misconduct of counsel, which defendants claim resulted in an excessive verdict. Upon the opening argument of Mr. Evens, the following colloquy occurred:

"Mr. Johnsen: The defendants except to the argument of Mr. Evens with reference to the giganticness of this corporation, as being prejudicial, and having no bearing on the issues in this case, and having no bearing on the evidence. The exception is predicated upon the remarks made by Mr. Evens to the jury, that the defendant is one of the most gigantic corporations in the country. The Court: I think the exception should be sustained. It is really immaterial whether it is a large corporation or a small one, and I think you had better not comment upon it. Mr. Evens: I will eliminate the word 'gigantic' but I can state that there are some four hundred stores. Mr. Mossman: Call it small, George, call it small. Mr. Johnsen: I except to the remark of Mr. Mossman, as prejudicial. The Court: Yes; leave those remarks out."

Upon the closing argument by Mr. Mossman, a copy of which was presented upon a motion for a new trial before the district court and preserved in the bill of exceptions, the rule and admonition of the court above set forth was entirely ignored by the speaker. Glancing through the report of his argument we note that he referred to defendant company as a corporation without any feeling or soul three times, as a big corporation twice, as consisting of 440 stores once, as rich clients once, and to the witnesses for defendants as these New Yorkers ten times. We need hardly remark that these matters were immaterial and furnished no proper basis for argument. This is particularly true as to such of them as had been ordered left out by the court. Such tactics have been frequently condemned by the courts. Plaintiff calls attention to the rule that, before improper conduct of counsel may be urged as error upon appeal, the objection to it must have been made at the time, a ruling of the court had thereon and exception taken, which is undoubtedly the general rule, but not applicable to the pres-

ent situation. Objection was made and ruling had upon the subject-matter during the opening argument. We think it was unnecessary for defendants' counsel thereafter to make repeated objections to each disregard of the ruling of the court. To require this might result in placing the defendants in a less favorable position before the jury, and thus inflict upon them a penalty for the wrongful conduct of plaintiff's counsel. The remarks of Sullivan, J., in *Ashland Land & Live Stock Co. v May*, 59 Neb. 735, are pertinent:

"We have little patience with counsel who deliberately seek to achieve success by lawless methods; and we do not hesitate, in any case, to deprive them of advantages thus obtained. In the performance of professional duties, counsel should endeavor always to conform their own conduct to the law which they have been commissioned to assist in administering."

In the trial of every contested lawsuit, there is abundance of opportunity, growing out of the material facts and circumstances of the case, for the display of extraordinary talent and the exercise of adroitness and finesse without resort to illegitimate methods tending only to arouse the passion and prejudice of the jury. It is of greater importance that the administration of justice be regular and orderly, than that counsel be afforded an opportunity to exhibit their peculiar prowess in the use of questionable methods.

We are not able to determine what influence, if any, the improper argument of counsel had upon the jury, but it was well calculated to distract their attention from the real issues, and the refusal to grant a new trial on this ground was prejudicial error.

Other errors assigned need not be discussed, as they will probably not occur on another trial.

For errors above noted, the judgment of the district court is

REVERSED.