Henry L. **COLE** and Neda Cole, **Plaintiffs-Appellants,**

v.

**BERTSCH VENDING COMPANY, INC.** and Harold D. Cremeens, **Defendants-Appellees.**

No. 83–2742.

United States Court of Appeals, Seventh Circuit.

Argued Oct. 31, 1984.

Decided July 1, 1985.

Haynsworth, Senior Circuit Judge, sitting by designation, filed a specially concurring opinion in which Cummings, Chief Judge, joined.

Timothy A. Shimko, Spangenberg, Shibley, Traci & Lancione, Cleveland, Oh., for plaintiffs-appellants.

Thomas W. Belleperche, Hunt, Suedhoff, Borror & Eilbacher, Fort Wayne, Ind., for defendants-appellees.

Before CUMMINGS, Chief Judge, COFFEY, Circuit Judge, and HAYNSWORTH, Senior Circuit Judge.[*]

COFFEY, Circuit Judge.

This appeal arises from a jury verdict finding that the defendants, Harold Cremeens and Bertsch Vending Company ("Bertsch"), were not liable for the alleged back injury suffered by the plaintiff, Henry Cole ("Cole"). We reverse and remand for a new trial.

## I.

The facts of this case are uncomplicated. On the cold, clear night of December 8, 1978, the plaintiff, Henry Cole, stopped his tractor-trailer truck at a red light at the intersection of U.S. Highway 30 and Indiana State Highway 109 outside of Fort Wayne, Indiana; his seat was in the highway position.[1] The defendant, Harold Cremeens, an employee of Bertsch Vending Company, testified during his deposition that while making business calls earlier that evening, he hoisted a few "rounds" at a local tavern. Unfortunately for Cole, Cremeens and his El Camino delivery truck were on the same road at the same time and smashed into the rear of Cole's tractor trailer traveling between 35 to 50 miles an hour. Cremeens was seriously injured and the El Camino was totally demolished. Cole testified that the force of the impact caused his seat to be thrown backward, causing his head to hit the sleeper rail in

---

[*] The Honorable Clement F. Haynsworth, Jr., Senior Circuit Judge of the United States Court of Appeals for the Fourth Circuit, is sitting by designation.

1. The plaintiff explained at trial that the driver's seat could be either secured to the floor or unsecured. When it is unlocked or in the "highway position" the seat provides more cushion for the ride since it is not anchored to the floor.

the cab of the truck with great force. The record reflects that immediately after the accident, Cole told an ambulance attendant on the scene that he did not believe he was injured. After calling into headquarters and arranging for a back-up truck to follow him to Chicago, Illinois, Cole continued his journey.[2] Cole noted that the back of the truck and its rear axles had been damaged by the impact and the truck required two tire changes before arrival in Chicago. At trial, Cole testified that approximately two to three hours after the accident he began to experience a stinging pain in the lower part of his back to his hip, down his leg, and to his foot. The following day Cole returned to his home in Ohio and went to bed. During the next month, in an attempt to ease the back pain and discomfort, he began to drink excessively; but, was forced to continue driving since he had recently purchased the truck and a home in Ohio and needed the money to make the monthly payments.[3]

Cole testified that he quit driving one month after the accident because the pain became so unbearable and visited Doctor Manthey, a general practitioner. At trial, Dr. Manthey testified that he treated the plaintiff's back condition with various drugs and traction requiring extended hospital stays, and advised Cole to do no more truck driving or any type of work requiring heavy lifting. Dr. Manthey, Cole's treating physician since the accident, referred him to Dr. Kackley, an orthopaedic surgeon. Dr. Kackley examined the plaintiff in August of 1979 and diagnosed his injury as a herniated disk[4]. Both doctors, Manthey and Kackley, testified at trial that they believed to a reasonable degree of medical certainty that the accident of December 8, 1978 caused Cole's back condition. Damag-

ing to Cole's case, however, was the fact that he had suffered a previous back injury in 1968, some eleven years earlier when employed as a laborer, but failed to disclose this injury to the doctors during his examinations. Nevertheless, after reviewing the 1968 doctor's report detailing Cole's earlier back strain, Doctors Manthey and Kackley were still convinced that Cole suffered a herniated disk injury as a direct result of the December 8, 1978 impact. The records submitted at trial showed that while the 1968 injury kept Cole from work for seven days, it was not severe enough to require hospitalization. The 1968 report also noted that while he suffered a severe strain, he suffered no permanent injury. Further, since that time and up until the time of the collision, the plaintiff had passed all physicals required for the performance of various physical labor jobs, including truck driving.[5]

A Dr. Meyer and a Dr. Stastny, testifying for the defendants,[6] also examined Cole and had him perform various stretch and bending tests. According to these doctors Cole was not suffering from a herniated disk at the time that they examined him in 1981. Further, they believed his herniated disk, discovered in a myleogram scan less than one year later, could have been caused by a number of other factors besides the accident. Dr. Meyer, who examined Cole in May of 1980, testified that he did not notice any appreciable restriction in Cole's range of motion and, thus, he did not believe Cole to be suffering from a herniated disk at the time of his examination, but he did state that Cole was disabled from a "psychological overlay" or imagined pain. Dr. Stastny examined Cole in November of 1980 and also concluded that he did not suffer from

---

**2.** The plaintiff testified that he continued on with the load because his employer had stressed to him the importance of making this particular delivery to Chicago the next day.

**3.** In 1977, the plaintiff began his career as a long-haul truck driver.

**4.** This action was later filed on October 11, 1979 in the United States District Court for the Northern District of Indiana.

**5.** In fact, as recent as six months prior to the accident Cole passed another physical exam that enabled him to gain employment with Winham Transportation, his employer at the time of the accident.

**6.** Both doctors were asked by the Ohio Industrial Commission to examine Cole.

a herniated disk. On cross-examination Doctors Meyer and Stastny did admit that many of the subjective symptoms that Cole exhibited were consistent with a herniated disk.[7] Also, both doctors confirmed that X-rays taken at their direction indicated a degenerative disk in the lower area of the back. They attributed this condition to wear on the back, but not to any single incident. Further, neither of these doctors requested either a myleogram or CT scan be performed to confirm their diagnosis.

A myleogram procedure performed in April, 1981 established that Cole was in fact suffering from a herniated disk in his lower back. He subsequently underwent laminectomy surgery in August, 1982. Dr. Manthey, who assisted in the surgery, testified that he observed an "extruded disk" pressing against the spinal cord between the fourth and fifth level of the lower back.[8]

■ Prior to trial, the defendants admitted that Cremeens was negligent and that his El Camino pick-up truck did in fact strike the rear of Cole's tractor-trailer. Cremeens also plead guilty in Indiana State criminal court to a charge of driving while under the influence of alcohol at the time of the impact. Under Indiana law, punitive damages are not available in a civil action where the defendant has been previously convicted of a criminal offense, *see Taber v. Hutson*, 5 Ind. 322, 324 (1854), and, thus, the district court granted the defendants' motion to strike the plaintiffs' claim for punitive damages. The magistrate also granted the defendants' motion *in limine*, prohibiting any reference to the fact that Cremeens had been drinking the night of the accident, since negligence and punitive damages were no longer contested issues and thus, according to the magistrate, any reference to Cremeens' drinking would be irrelevant and would only inflame the jury.

The trial was marked with numerous unusual and questionable events. Cremeens testified that prior to the impact, he believed he was traveling between 35 to 40 miles per hour, that he saw the plaintiff's truck, but was not sure how hard he had hit the truck nor was he sure whether or not he had attempted to apply his brakes before impact. The plaintiff's counsel attempted to impeach Cremeens by referring to testimony he had previously given during his deposition that was inconsistent with many of the facts and circumstances he related at trial. While this cross-examination was progressing, Cremeens suffered a heart attack on the stand. The magistrate asked both parties if they desired a mistrial be declared, but they declined. On the final day of trial, it was reported to the magistrate that one of the jury members may have been drinking during the lunch hour.[9] During jury deliberations that same day, the juror suffered what appeared to be an alcohol-related seizure. The magistrate again asked each party whether it wished the court to declare a mistrial and once again both parties declined. Finally, in closing argument, the defendant's counsel openly appealed to the jury for sympathy for his clients when stating that if any jury member should feel sympathy, it should be directed at Cremeens and his employer, Bertsch Vending. He also referred, on several occasions, to the fact that plaintiffs' witnesses were from Ohio. This case was tried before a jury of Fort Wayne, Indiana citizens and, at the time of the trial, International Harvester, the employer of 4,000 persons in Fort Wayne, was considering whether to close its plant in Fort Wayne or its plant in Springfield, Ohio. There was a heated battle between the cities of Fort Wayne and Springfield over the location of those 4,000 jobs.

7. In fact, Dr. Stastny admitted that while he did not believe Cole suffered from a ruptured disk he could not positively state that a ruptured disk did not exist at the time of his examination.

8. Dr. Ebner, a specialist in orthopedic surgery, performed the operation and noted in his report that a ruptured disc existed between the fourth and fifth levels of the lumbar vertebral area.

9. The magistrate stated that after being informed of the incident he scrutinized the juror's behavior through the remainder of the proceedings and found nothing unusual.

At the close of trial, the jury returned a verdict in favor of the defendants, finding that Cole's back injury was not proximately caused by the accident on December 8, 1978. In a post-trial motion, Cole requested, but the court denied, judgment n.o.v. or, in the alternative, a new trial. On appeal, the plaintiff Cole requests this court to reverse the jury's verdict and the magistrate's order denying its motion for judgment n.o.v. reciting that the evidence presented at trial conclusively established that his injury was proximately caused by the accident and that the defendants failed to present any credible evidence contradicting the causal link between his back injury and the impact of the crash. In the alternative, Cole requests a new trial based upon the prejudicial impact of the trial court's exclusion of any reference to the defendant Cremeens drinking before impact and the defense counsel's prejudicial statements made during his closing argument.

## II.

Cole initially requests that we reverse the magistrate's order denying his motion for judgment n.o.v. In support of his argument, Cole notes that (1) two doctors testified that the plaintiff's condition was directly caused by the December 8, 1978 collision; (2) he felt pain shortly after the impact and the pain grew progressively worse; and (3) his present inability to do any further truckdriving or heavy work results directly from the collision. Cole also argues that the defendants failed to rebut the evidence establishing proximate causation since the doctors who testified for the defendants failed to state definitely that his condition was not caused by the collision; rather, he asserts that their disagreement with Doctors Manthey and Kackley concerned only the extent of his injuries.

**10.** Dr. Manthey testified that surgery in cases such as the plaintiff's is a last resort since the chances of success are only approximately 40 percent, and the surgery considerably weakens the back.

■ A judgment notwithstanding the verdict should be granted where the "evidence presented, combined with all reasonable inferences permissibly drawn therefrom, is insufficient to support the verdict when viewed in the light most favorable to the party against whom the motion is directed." *Syvock v. Milwaukee Boiler Mfg. Co., Inc.,* 665 F.2d 149, 153 (7th Cir.1981). "[J]udgment n.o.v. is properly denied where the evidence is such that reasonable men in a fair and impartial exercise of their judgment may draw different conclusions therefrom." *Hannigan v. Sears, Roebuck and Co.,* 410 F.2d 285, 287 (7th Cir.1969). Cole presented extremely persuasive evidence in this case establishing that the accident proximately caused his injury. In this regard, he testified that he felt pain in his lower back within two hours after the impact, but he continued to drive for approximately one month after the accident until such time as he was no longer able to perform his duties because of the extreme pain and discomfort. One month after the accident, Cole began to see Dr. Manthey who attempted to treat his back injury with bed rest, medication and traction, but this course of treatment was unsuccessful and ultimately surgery had to be performed.[10] Both Doctors Manthey and Kackley testified that based upon a reasonable medical certainty Cole suffered from a herniated disk that was caused by the December 8, 1979 collision. The two doctors, who examined Cole and testified for the defendants, stated that they did not believe the plaintiff was suffering from a herniated disk at the time of their examinations. One of the doctors, a Dr. Meyer, believed he was disabled due to a "psychological overlay." These doctors testified that the plaintiff's injury, which was later diagnostically confirmed in a myleogram, could have been caused by any number of things between the time of their examinations and the time of the myleogram procedure.[11] On cross-

**11.** One illustration used at trial involved the ex-boxer Rocky Graziano who injured his back while bending over to tie his shoes.

examination both of the defendant's doctors did admit that many of the symptoms exhibited by the plaintiff during the examinations were consistent with that of a patient suffering from a herniated disk.

■ There was also evidence in the record that Cole had in fact suffered a previous back injury some eleven years earlier. It was disclosed at trial that this injury occurred in 1968 and resulted from Cole attempting to lift a heavy object. He missed approximately six to seven days of work due to the back strain. Cole testified that he had forgotten to mention the previous injury because it was minor and the recovery was uneventful. This may be true, especially where there was no evidence in his employment or medical history of any problems with his back from 1968 until the time of the accident some eleven years later.[12] We note, however, that Cole's failure to mention the previous injury when discussing his back problem with his doctors, Manthey and Kackley, provided the defendants with evidence to question his credibility. As a reviewing court we are extremely reluctant to sit in review of the credibility of witnesses and see no necessity in this case to deviate from our usual procedure. *See, e.g., La Montagne v. American Convenience Products, Inc.,* 750 F.2d 1405, 1410 (7th Cir.1984); *Freeman v. Franzen,* 695 F.2d 485, 488–89 (7th Cir.1982). Credibility is a jury issue and the jury did receive evidence that Cole had previously suffered a lower back strain that he failed to disclose. Reviewing the evidence in the light most favorable to the defendants, Cole's credibility concerning his back injury was a crucial issue at trial, exclusively within the province of the jury. Thus, under these circumstances, we will not set aside the jury's verdict and enter a verdict in favor of Cole.

■ In the alternative, the plaintiff asks us to remand this case for a new trial. While we are aware that a motion for a new trial is addressed to the sound discretion of the district court, *see, e.g., Dr. Franklin Perkins School v. Freeman,* 741 F.2d 1503, 1517 n. 21 (7th Cir.1984), we hold that a new trial is warranted in this case because of numerous errors that occurred at trial that prejudiced the plaintiff's case, including defense counsel's asking the jury for sympathy for his client and the district court's order prohibiting any reference to the fact that Cremeens had been intoxicated immediately prior to the accident.

■ As previously stated, entry of judgment n.o.v. in favor of Cole is improper in this case, as Cole's credibility was a contested issue at trial where he had previously failed to disclose his prior back injury. However, Cole did submit convincing evidence establishing proximate cause, including: two doctors who affirmatively testified as to the proximate cause of his back injury; the timing of the complaints about pain and subsequent treatment for that pain; and the fact that he had passed previous physical examinations prior to the impact; and the myleogram exam revealing a herniated disk less than six months after one of the defendants' doctors concluded that Cole did not suffer from a herniated disk. The defendant's evidence, on the other hand, merely consisted of two doctors who performed a superficial and limited examination of Cole and who speculated as to a number of factors that could have caused Cole's injury. The defendants also relied on the fact that Cole suffered a back injury in 1968. We believe, after reviewing the medical evidence and testimony regarding his physical condition, that it is highly questionable that his prior strain caused the plaintiff's condition after the accident given the fact that this strain required neither hospitalization nor extensive medication at the time and, further, that Cole had been employed, apparently without any

12. He was not hospitalized at the time he suffered the back injury in 1968 and, Cole testified, up until the time of the accident, he had been pain free and had been able to carry on his normal duties as a truck driver without incident. In fact, Cole had passed several complete physical examinations, including one performed by the Department of Transportation as recent as six months prior to the accident qualifying him to work as a long distance truck driver.

re-occurring back problems, from 1968 until the time of the accident in December of 1978. *See supra* note 10. The usual rule for tort recovery is that you take the victim as you find him. *Prosser & Keeton on Tort's,* § 43 at 291–92 (5th ed. 1984). This rule is reflected in Indiana law where a person may be found liable for aggravating a pre-existing injury. *Faulk v. Chandler,* 408 N.E.2d 584, 586 (Ind.App.1980).[13] It is not disputed that prior to the accident the plaintiff was certainly able to function in the various physically demanding jobs which he held as contrasted with the persuasive evidence that during the period since the date of the accident his mobility and ability to function have been significantly reduced and impaired. If, in fact, his back was injured to any significant degree prior to the impact, the accident appears to have greatly aggravated Cole's condition.

In view of the substantial evidence to support Cole's theory that the auto accident of December 8, 1978, caused his back injury, it seems likely that a jury's verdict in favor of the defendant was influenced by prejudicial errors committed during the course of the trial.[14]

As we previously pointed out, at the time of trial, the residents of Fort Wayne, Indiana and Springfield, Ohio were each attempting to convince International Harvester, a major employer in each area, not to close its plant in their respective city. Cole argues that at that time a media campaign was being waged by Fort Wayne in an attempt to persuade International Harvester from closing its plant and transferring the jobs to another city in Ohio.[15] The

defense counsel, during his closing argument before this Fort Wayne, Indiana jury, made repeated reference to the fact that the plaintiffs' witnesses were from Ohio. At oral argument before this court, defense counsel attempted to explain this reference as a valid "trial tactic"; we disagree as the only tactic we discern is that of attempting to improperly persuade the jury. Certainly, given the plaintiffs' medically well-documented case, the constant reference in closing argument to the fact that the plaintiffs' witnesses were from a geographical area which was competing directly with that of the juror's for placement of a critical plant and its attendant jobs could very well have prejudiced the plaintiffs' case. *See, e.g., Rojas v. Richardson,* 713 F.2d 116 (5th Cir.1983); *Hall v. Rice,* 117 Neb. 813, 223 N.W. 4, 8 (1929) (improper reference to fact that plaintiffs were "New Yorkers"). Our review of the record, however, reveals that plaintiffs' counsel failed to object to these statements during defense counsel's closing argument. *See, e.g., United States v. Fearns,* 501 F.2d 486, 489 (7th Cir.1974) (to preserve error must object during closing argument); Fed.R. Evid. 103(d). Rather, on rebuttal he merely asked the jury to disregard defense counsel's remarks. Since plaintiffs counsel failed to object during the defendant's closing statement, to constitute reversible error such comments must be plain error. These comments by themselves do not rise to a level of plain error since they were not "obvious and substantial." *See Rojas,* 713 F.2d at 190. However, when these references are considered along with the other significant prejudicial occurrences, and

---

13. The jury was instructed that "if ... you determine that the plaintiff was suffering from a pre-existing condition, then the plaintiff is only entitled to recover for the aggravation to the pre-existing condition, if any,...."

14. Contrary to the position of the concurring judges, I am convinced that the discussion of proximate cause is not only appropriate but is necessary in order that the court might clearly enunciate that in their considerate opinion, the plaintiff did in fact present a strong case and the gravity and number of errors arising at trial were of such serious nature that they affected

the verdict of the jury. On the other hand, if the plaintiff's evidence on the issue of proximate cause had been weak, then it would not have necessitated reversal, as the errors would have been considered harmless, because they would not have affected the outcome of the trial when reviewing and considering all of the evidence in light of the totality of the trial record.

15. On appeal, the defendants do not deny that the Fort Wayne community was battling with Springfield, Ohio over the location of the 4,000 jobs.

their possible effect on the outcome of the trial, we hold the plaintiffs were unduly prejudiced and a new trial is required.

Defense counsel during his closing argument openly asked the jury to feel sympathetic towards his clients.[16] Such statements are particularly inappropriate where Cremeens had earlier in the trial suffered a heart attack on the stand and the jury could have interpreted these remarks as a plea for pity, considering the condition of his client, when determining the extent of liability. Requesting sympathy for a defendant is improper especially where such argument may have a prejudicial impact upon the result. *See Joseph v. Brierton,* 739 F.2d 1244, 1247–48 (7th Cir.1984); *cf. Gonzalez v. Volvo of America Corp.,* 752 F.2d 295, 298 (7th Cir.1985).

Further, the district court's order prohibiting any reference to Cremeens' consumption of alcoholic beverages immediately prior to the accident was overly broad and restrictive and, from our vantage point, prejudiced the plaintiff's case. We are well aware that the grant or denial of a motion *in limine* is usually left to the sound discretion of the trial court. *See e.g., Binks Mfg. Co. v. National Presto Industries, Inc.,* 709 F.2d 1109 (7th Cir.1983). Admittedly, drinking is not relevant as it relates to the issue of negligence since the defendants did admit prior to trial that Cremeens was negligent. However, as the evidence unfolded at trial, Cremeens' credibility and his testimony concerning the impact upon Cole's truck became important issues in view of the fact of Cremeens' convenient memory lapse as to what had happened on the night of the accident. In his deposition taken before trial, Cremeens stated that although it was a clear night, he never saw the plaintiff's truck sitting at the stop light. Further, he stated in his deposition that he did not know how fast he was going at the time (although he reportedly told a police officer at the scene he was traveling at approximately 50 miles per hour), and that he did not attempt to apply his brakes prior to impact. At trial, Cremeens, prior to his suffering a heart attack on the stand, directly contradicted his deposition testimony stating that he had believed he was traveling at approximately 35 to 40 miles per hour and that he did in fact see the plaintiffs' truck prior to impact, but he was not sure whether or not he attempted to apply his brakes. Cole's counsel was allowed to read to the jury the relevant portions of the deposition in which Cremeens admitted that he did not know how fast he was going and that he had not applied his brakes prior to impact; however, the jury was forced to speculate as to the actual reason why his stories of the same event differed so substantially between the time of his deposition testimony and the time of the trial. For instance, without information as to his ingesting intoxicating beverages, the jury could have believed that given the nature of Cremeens' injuries caused by the accident he could not specifically remember what had happened at the accident scene at the time of his deposition and that his memory was more accurate at the time of trial.

Once Cremeens' testimony at trial began to indicate that the force of the impact was not as great as that which he had indicated in his deposition, his credibility, or more accurately his ability to observe and remember the particular facts, did become an issue at the trial. *See Miles v. Ryan,* 484 F.2d 1255, 1257 (3d Cir.1973) (level of intoxication must be established in order to prove inability to accurately observe and remember an event); *Rheaume v. Patterson,* 289 F.2d 611, 614 (2d Cir.1961) (capacity to observe and remember affects credibility of witness); *see also United States v. Blackwood,* 456 F.2d 526, 530 (2d Cir.1972) (jury has the right to sufficient information concerning the events in order to make a

---

**16.** An extract of this argument is included below:

"It's hard not to be moved by sympathy ... But if sympathy is going to play a part in if you will let it get in there and get a hold of you, I suggest this, I think the defendants are entitled to some ... [objection].... I am suggesting to you that there would be nothing wrong with Vending Company...."

"discriminating appraisal" of the witnesses' motives and biases). In this case, the jury was presented with two dramatically different versions of the accident. In the version Cremeens presented at trial, he stated he was going 35 to 40 miles an hour, he saw the truck prior to impact and was not sure whether he applied his brakes. In his sworn testimony at deposition he stated he did not know how fast he was going (although it was suggested that he was going 50 miles per hour) and that he neither saw the truck nor attempted to apply his brakes.

In our system of justice, the trial is supposed to be a search for the truth. Certainly, the jury was entitled to an accurate, truthful, unadulterated recitation of the events leading up to the accident. Further, the jury was entitled to information as to which version was more credible since one version of the accident differed dramatically from the other and, thus very well could have affected the jury's determination as to the severity of impact as it relates to the issue of proximate causation of the plaintiff's injuries.[17] *See Bright v. Firestone Tire & Rubber Co.,* 756 F.2d 19 (6th Cir. 1984) (intoxication of car's driver may, in some instances, be relevant to issue of causation).

Because of the impact of the improper and prejudicial statements made by the defense counsel during closing argument and the magistrate's order excluding any and all reference to Cremeens' intoxication during trial, which we believe could very well have improperly affected the jury's verdict in what should have been a strong case for the plaintiff if the recitation of the facts were given in a truthful manner, we re-mand this case to the magistrate for a new trial.[18]

We reverse and remand for a new trial. Circuit Rule 18 shall apply on remand of this case.

HAYNSWORTH, Senior Circuit Judge, concurring specially in which CUMMINGS, Chief Judge, joins:

I concur in the result.

It would have been perfectly proper for evidence of the intoxication of Cremeens to have been excluded after the admission of liability, had Cremeens not been proffered as a witness. It was inherently unfair, however, to permit him to testify as to the circumstances of the collision in an attempt to minimize its force without being subject to cross-examination about his drunken condition so that the jury would understand that at the time of the collision his powers of observation and recollection were impaired. That unfairness, together with inappropriate comments by defense counsel, warrants the direction of a new trial.

I believe, however, that the discussion of the question of proximate causation is largely inappropriate.

The plaintiff offered sufficient evidence to warrant an inference by the jury that the impact of the collision caused his ruptured disc, but many things, great and small, can cause the rupture of a vertebral disc. It can result from the kind of thing that many of us do routinely with some frequency. Quite apart from Cole's much earlier back strain, the question of causation was a typical one for submission to a jury.

On retrial, the plaintiff's lawyer may stress and emphasize the strength of the

---

17. For instance, if the jury had known that Cremeens was drunk at the time of the accident, the jury could have concluded that his testimony at trial was not credible; but rather, his testimony during the deposition, where he admitted he had been drinking and testified that he may have been going 50 m.p.h. and that he did not apply his brakes was the more believable story.

18. Since the plaintiff waived at trial his opportunity for a new trial because of Cremeens' heart attack on the stand and the apparent drinking and seizure of a jury member during deliberations, we do not reach the issue of the effect of those occurrences on the jury's verdict.

Upon retrial if Cremeens is able to testify and his testimony again differs from that of his deposition, the magistrate should allow the plaintiff to raise the issue of Cremeens' intoxication prior to impact.

plaintiff's case on that factual question, but I think it inappropriate for this appellate court to notice it and, in the process, to disparage the strength of the defendant's case on the same controverted question of fact.