## HENTHORN *v.* THE WESTERN MARYLAND RAILWAY COMPANY

[No. 39, September Term, 1961.]

*Decided October 17, 1961.*

The cause was argued before HENDERSON, HAMMOND, HORNEY, MARBURY and SYBERT, JJ.

*Morgan L. Amaimo,* for appellant.

*Paul S. Parsons,* for appellee.

HORNEY, J., delivered the opinion of the Court.

This is an appeal by Richard Henthorn (plaintiff-appellant), a former employee of the Western Maryland Railway Company (defendant-appellee), the employer, from a summary judgment entered against the plaintiff in favor of the defendant for costs in the suit of the employee against the employer for damages for wrongful discharge and for defamation of character.

As the result of an incident [1] that occurred on January 13,

---

1. The employee claimed that while he was engaged with other members of a train crew in a switching operation near a scrap yard of the railway company he picked up a coil of wire lying on the track outside of the scrap yard and placed it in the cab of the locomotive for the purpose of taking it to the supervisor at the Port Covington yard; that, in the course of openly carrying the wire to the office of the supervisor, during a twenty minute break or rest period and while he had paused to talk to a fellow employee, he was approached by a yard policeman (a sergeant) who wanted to know what he was doing with the wire; and that, upon informing him that he was taking it to the yard office, the sergeant went along with him. On the other hand, the employer claimed that after the rest period was over and at a time when he was supposed to be on duty, the employee left the switching locomotive, carried the coil of wire to his automobile, had opened the trunk, and was about to place the wire in it when he was

1959, the employee was discharged for removing a coil of wire from the railway premises without authority in violation of Rule 735 of the company (which stated in part that employees "who are dishonest, immoral, or otherwise undesirable, will not be continued in the service") and for absenting himself from duty without permission in violation of Rule 740 (which stated in part that employees "will not be allowed to absent themselves from duty * * * without proper authority"). The dismissal followed an investigation and hearing before a trainmaster held on January 22, 1959, pursuant to the provisions of Rule 95(a) contained in the employment agreement between the Railway and the Brotherhood of Railroad Trainmen.

On February 4, 1959, the plaintiff, alleging in effect that the statements made and published at the hearing before the trainmaster constituted defamation of his character, filed this action claiming special damages for the loss of his job and general damages to his reputation and future loss of wages for a period of thirty years before reaching retirement age. At about the same time that suit was filed the employee requested the Brotherhood to test the propriety of the decision of the trainmaster in denying his claim for reinstatement with pay for lost time by resorting to the internal or "on the premises" appellate procedures prescribed by the employment agreement. In these grievance procedures—which are specifically set forth in Rule 95 (b) (4), (5), (6)—it is provided that a dismissal from service should first be reviewed by officers of the employing company.

In compliance with the means of review set forth in the agreement, the decision of the trainmaster denying reinstatement of the employee was successively upheld at hearings before the assistant superintendent, division superintendent and the manager of labor relations acting for and on behalf of the

---

stopped by the police sergeant; and that after some discussion the employee suggested that the wire be taken to the yard office in order that a determination could be made as to whether he could keep it. The Brotherhood of Railroad Trainmen, as well as the other members of the crew, in sworn statements, supported the contentions of the employee.

vice-president of operations. The affirmance of the decision of the trainmaster by the manager of labor relations, on July 31, 1959, as the "highest officer" of the Railway completed internal appellate procedures. And, under the agreement, the decision of such highest officer would be final and binding unless the Brotherhood, within the times specified, instituted proceedings for the final disposition of the claim of the employee either before the National Railroad Adjustment Board in Chicago or a Special Board of Adjustment to be established in pursuance of the employment agreement under the provisions of the Railway Labor Act, codified as 45 U. S. C. A., § 153(2). A Special Board, consisting of representatives of the Brotherhood and the Railway with a neutral member as chairman, having been created by agreement to finally hear and determine the claim of the plaintiff-appellant (along with the claims of other employees of the Railway), was approved by the executive secretary of the National Mediation Board.

When the Special Board met in the latter part of September and early part of October of 1959, the claim of the employee for reinstatement was fully presented and argued by the interested parties and the case was submitted to the chairman, as the neutral member, for decision. But a final decision was not made until October 26, 1960.

In the meantime, the employee, after waiting more than nine months for a decision, became impatient and through counsel addressed a letter to the representative of the Brotherhood on the Special Board requesting that his claim be withdrawn from further consideration. The request was forwarded to the chairman, but he refused to permit a withdrawal without the consent of the Railway, which was not given. Despite this, the employee, on February 18, 1960, proceeded to amend the declaration for civil damages in such manner as to make it clear that he was suing for damages for the wrongful discharge as well as for defamation of character.

The original ruling of the trainmaster having been affirmed by the Special Board, the Railway, on December 16, 1960, filed a motion for summary judgment supported by an affidavit setting forth the facts to which was attached a copy of the decision of the Special Board affirming the dismissal of

the employee. When the case was heard on the motion, the trial court concluded that the decision of the Board was binding on it with respect to the action for damages for wrongful discharge and further concluded that the alleged defamatory statements were qualifiedly privileged, and, finding no genuine dispute as to any material fact under the circumstances as to either claim, the court granted the motion for summary judgment and entered a judgment for costs in favor of the defendant. And the plaintiff appealed.

Two questions are presented by the appeal:(i) whether the plaintiff could go forward with his suit for damages for wrongful discharge after having elected to have his claim for reinstatement and back pay · determined by resorting to his contractual and administrative remedies; and (ii) whether the statements made and published during the course of the investigation or hearing before the trainmaster constituted actionable defamation of character.

## (i). Wrongful Discharge.

The real problem here, as we see it, is whether the plaintiff-appellant, having processed his claim for reinstatement and back pay through the internal appellate procedures available to him (through the aegis of the Brotherhood) under the employment agreement, as he was required to do, and elected to further litigate the propriety of his discharge before the Special Board of Adjustment created for that purpose (among others) under the Railway Labor Act, could thereafter maintain his suit for damages for wrongful discharge. We think he could not.

Since the enactment of the Railway Labor Act the Supreme Court of the United States has had occasion to decide a number of cases concerning the impact of that federal legislation on common-law actions for wrongful discharge. In the early case of *Moore v. Illinois Central R. R. Co.,* 312 U. S. 630 (1941), which originated in Mississippi, where upon discharge an employee had a right to consider all relationship with the employer as severed and proceed in a court of law for wrongful discharge, it was held that an employee was not required to exhaust his contractual remedies before proceed-

ing in a civil action for damages. But, more recently, in *Transcontinental & Western Air, Inc. v. Koppal,* 345 U. S. 653 (1953), where under the law of Missouri a discharged employee was required to exhaust the administrative procedures prescribed in the employment contract before suing in a court of law, the Court ruled that the law of the state in which a suit for wrongful discharge was brought should govern whether or not an employee must first exhaust his contractual remedies.

Subsequent to the decision in the *Koppal* case, *supra,* several courts in other jurisdictions refused to consider actions for damages if it was not shown that the employee had exhausted his contractual remedies. And the courts in at least two states have gone even further and held that exhaustion of contractual remedies in and of itself is not sufficient and have dismissed actions seeking civil damages for failure to appeal to an Adjustment Board. See *Payne v. Pullman Co.,* 141 N. E. 2d 83 (Ill. 1957), and *Jorgensen v. Pennsylvania R. R. Co.,* 138 A. 2d 24 (N. J. 1958).

Furthermore, in the recent case of *Union Pacific R. R. Co. v. Price,* 360 U. S. 601 (1959), in which an employee had not only exhausted his contractual remedies but had also submitted his grievances as to the validity of his discharge to the National Railroad Adjustment Board, it was held that an employee, who has once submitted his claim for reinstatement to an administrative board for a final decision, is thereafter barred from proceeding in a civil action for damages for wrongful discharge. There the Supreme Court said (at p. 617):

> "To say that the discharged employee may litigate the validity of his discharge in a common-law action for damages after failing to sustain his grievance before the Board is to say that Congress planned that the Board should function only to render advisory opinions, and intended the Act's entire scheme for the settlement of grievances to be regarded 'as wholly conciliatory in character, involving no element of legal effectiveness, with the conse-

quence that the parties are entirely free to accept or ignore the Board's decision * * * [a contention] inconsistent with the Act's terms, purposes and legislative history,' (quoting *Elgin, J. & E. R. Co. v. Burley,* 325 U. S. 711, at pp. 720-721).

Maryland is one of the states requiring an employee to exhaust his contractual remedies as a condition precedent to maintaining an action for damages in a court of law. In the recent case of *Jenkins v. Schluderberg, etc., Co.,* 217 Md. 556, 144 A. 2d 88 (1958), where we had occasion to point out (at p. 575) that "as a general rule grievance procedures provided by a collective bargaining agreement should be a bar to suits by individuals against the Employer based upon alleged violation of the agreement," we clearly indicated that in an appropriate case we would so hold.

It is true, of course, that in the *Jenkins* case, *supra,* we held that the action of the plaintiff for damages for alleged wrongful discharge was not barred because in that case the union had acted unfairly toward the employee in refusing to press her claim for reinstatement under the employment agreement, but that was not the case here. And, although the plaintiff in the instant case contends that the Special Board treated him unfairly in failing to render a decision sooner, there is nothing in the record to show that he ever complained either to the Special Board or to the Brotherhood as to the delay until he sought to withdraw. Furthermore, there was no showing that the appellant had been prejudiced in any way by what he apparently considered was unwarranted procrastination. On the contrary, had he been permitted to withdraw the claim, it is clear that his situation would not have been different (cf. *Jorgensen v. Pennsylvania R.R., supra*), for under the grievance procedures set forth in the employment agreement it is specifically provided that the decision of the "highest officer" of the company shall be "final and binding" after the expiration of the times therein stipulated if no "proceedings for the final disposition of the claim are instituted."

From what has been said, we think it is apparent, and we so hold, that the action of the appellant in exhausting his contractual remedies as he was required to do under the law of

this State, and in subsequently electing to submit his claim for reinstatement to the specially created administrative board for a final decision, had the effect of barring any further prosecution of his action for damages for wrongful discharge.

### (ii) Defamation of Character.

Since it appears that the dismissal of the action for wrongful discharge was not determinative of the action for defamation of character, we think we must also decide the second question presented, for as we see it a finding that the appellant had in effect been rightfully discharged did not uncontravertibly establish the truthfulness of the charge that he had been "dishonest." And, since it also appears that the statements made and published at the hearing before the trainmaster, if untrue, were actionable *per se,* the only problem here is whether the publication thereof was a qualified privilege. We think it was.

There is little doubt that the connotation of the charge— that the employee had removed a coil of wire without authority and attempted to place it in the trunk of his automobile —was to the effect that the appellant had stolen or was in the act of stealing company property. A written charge of that character is ordinarily considered to be libelous *per se* on its face. *Simon v. Robinson,* 221 Md. 200, 154 A. 2d 911 (1959); *Shockey v. McCauley,* 101 Md. 461, 61 Atl. 583 (1905). But the defendant asserts that under the existing circumstances the publication of the libelous matter was qualifiedly privileged as a matter of law.

As to this, the law is well settled in this State that a "libelous communication is privileged only when the occasion shows that the communicating party and the recipient have a mutual interest in the subject matter, or some duty with respect thereto." *Simon v. Robinson, supra,* at p. 206. See also the cases therein cited to support this proposition. And see Restatement, *Torts,* § 595 (1) (b), where it is said that "[a]n occasion is conditionally privileged when the circumstances induce a correct or reasonable belief that the recipient is one to whom the publisher is under a legal duty to publish the defamatory matter or is a person to whom its publication is

otherwise within the generally accepted standards of decent conduct."

That the defendant had a duty under the circumstances to communicate the libelous matter to those present at the hearing seems clear. Under the terms and provisions of the Railway Labor Act and the employment agreement executed pursuant thereto, the appellant had a right to the hearing and notice of the charges against him, and since he did, the defendant was entitled to the protection of a qualified privilege in revealing the charges. *Jorgensen v. Pennsylvania R.R., supra.*

The appellant, of course, contends that there was no qualified privilege as a matter of law. We do not agree. In *Beeler v. Jackson,* 64 Md. 589, 2 Atl. 916 (1886), this Court had occasion to decide whether a frank answer to a question given truthfully, honestly and fairly was within the limits of a privileged communication. There the appellee, who had been discharged from employment by a general agent of the Baltimore and Ohio Railroad Company, inquired of the agent the reason for his discharge. The discharged employee was told that he had been stealing fruit, fish and nuts and breaking up car doors and taking them away. It was held that the case was properly taken from the jury because there was no fact or circumstance which tended "to show a want of good faith on the part of the defendant in acting on the report of the detective; or that in answering the inquiry addressed to him by the plaintiff, he exceeded the requirements of the occasion." The decision in that case is in point here in that it appears the publication in question was fairly within the limits of good faith and the standards of decent conduct. Furthermore, when a communication is privileged, the burden is on the plaintiff to prove express malice or bad faith, *Evening News Co. v. Bowie,* 154 Md. 604, 141 Atl. 416 (1928), and there was no such showing in the present case.

We think the lower court was correct in ruling that the publication of the alleged defamatory statements were qualifiedly privileged as a matter of law and we so hold.

Finally, since the record is such as to show that there was no genuine dispute as to any material fact and that the de-

fendant was entitled to judgment as a matter of law on both aspects of this case, Maryland Rule 610 a 1, the judgment for costs will be affirmed.

*Judgment affirmed; appellant to pay the costs.*