507 P.2d 447

**David NEECE, Plaintiff-Appellant,**

v.

**Art KANTU et al., Defendants-Appellees.**

**No. 969.**

Court of Appeals of New Mexico.

Feb. 2, 1973.

Certiorari Denied Feb. 27, 1973.

Patrick L. Chowning, Albuquerque, for plaintiff-appellant.

William S. Dixon, Rodey, Dickason, Sloan, Akin & Robb, P.A., Albuquerque, for defendants-appellees.

## OPINION

SUTIN, Judge.

This is an appeal by plaintiff from a summary judgment granted defendants TransWorld Airlines, Inc. (TWA), Furst and Ritschel.

Plaintiff filed an amended complaint. The first claim for relief alleged that defendants Ritschel and Furst, employees of TWA, communicated orally and in writing to third parties that plaintiff was guilty of stealing beer, and ice, all of which was false; that this was done deliberately, maliciously and unlawfully with no justification; that such communications caused plaintiff to be dismissed from his employment with defendant, TWA; that by reason of the malicious nature of the action, plaintiff was entitled to punitive damages.

Plaintiff's second claim for relief incorporated the foregoing, and alleged further that TWA wrongfully and maliciously, and without cause and in violation of the contract of employment between plaintiff and TWA, discharged plaintiff causing him actual and punitive damages.

Defendants filed no answer to the amended complaint. Defendants filed a motion for summary judgment based in part on the claim that all alleged defamatory statements were absolutely and conditionally privileged. The motion was supported by pleadings, affidavits, and depositions. The motion was sustained. The following judgment was entered:

This Matter having come on for hearing on Motion for Partial Summary Judgment filed by Defendants herein, and the Court having read the depositions, affidavits, and other documents on file and admitted into evidence, including the Collective Bargaining Agreement between Defendant, Trans World Airlines, Inc., and the International Association of Machinists and Aerospace Workers, and

having heard the argument of counsel, and having been fully advised in the premises,

The Court finds as follows:

(1) That Plaintiff David Neece is an employee of Trans World Airlines, Inc. and is subject to the provisions of the Collective Bargaining Agreement filed herein.

(2) That the allegedly defamatory statements by Defendant Paul W. Furst were published on an unqualifiedly privileged occasion, and are absolutely privileged.

(3) That the allegedly defamatory statements by Defendant Paul Ritschel, made in the parking lot on August 16, 1970, regarding Plaintiff were published on an unqualifiedly privileged occasion and are absolutely privileged. The occasion on which such statements were made is expressly provided for in the Collective Bargaining Agreement by Article XI(b)(1). See letter from Court attached hereto as Exhibit A.

(4) That Plaintiff David Neece has elected to pursue his remedies under the Collective Bargaining Agreement.

IT IS HEREBY ORDERED, ADJUDGED AND DECREED:

(1) The Second Cause of Action of the Amended Complaint for wrongful discharge is hereby dismissed with prejudice, the same being barred by the election of remedies under the Collective Bargaining Contract by Plaintiff.

(2) With respect to the cause of action stated against Paul W. Furst for libel and slander, the same is hereby dismissed with prejudice, all publications by Furst being made on absolutely privileged occasions.

(3) With respect to the cause of action stated against Defendant Ritschel, the same is hereby dismissed with prejudice, all publications by Ritschel being made on an absolutely privileged occasion.

(4) Defendant, Trans World Airlines, Inc., is hereby granted judgment in its favor and the causes of action stated herein against it are dismissed with prejudice.

(5) The Court expressly determines that there is no reason to delay entry of final judgment in this matter with respect to Defendants Ritschel, Furst and Trans World Airlines, Inc. and does therefore expressly direct that judgment be entered.

EXHIBIT A:

August 26, 1971

Mr. Patrick Chowning
Attorney at Law
7800 Phoenix Ave. N.E.
Albuquerque, New Mexico

Mr. William S. Dixon
Attorney at Law
P. O. Box 1888
Albuquerque, New Mexico

Re: Neece v. Cantu, et al, No. A49810
Gentlemen:

The Court finds that under General Motors Corporation v. Mendicki, 367 F.2d 66 (1966), C.A.10th, the statements allegedly made by Mr. Ritschel in the parking lot are unqualifiedly privileged. In making this ruling I have considered the Collective Bargaining Agreement, Article XI(b)(1) which reads in part as follows:

"Any employee having a complaint or grievance in connection with the terms of employment, application of this Agreement, or working conditions, will with the steward, discuss the matter with his immediate supervisor."

If counsel are dissatisfied with this ruling you may wish to consider using the New Interlocutory Appeals Act, if it is applicable.

Sincerely,

s/ Gerald D. Fowlie

Plaintiff claims, (1) the summary judgment was erroneous based on the law; (2)

the partial dismissal of plaintiff's complaint does not include all the torts which defendants might be sued for under plaintiff's complaint; (3) breach of contract was uncontroverted and finding on Election of Remedies premature; (4) plaintiff did not complete discovery.

(1) *The Summary Judgment was not Erroneous under the Law as to Furst, but was as to Ritschel.*

Defendants "contend that the defamatory statements alleged in the Amended Complaint were published in the course of a union-management grievance procedure established under a Collective Bargaining Agreement authorized by the Railway Labor Act and were absolutely privileged under applicable federal law."

TWA and the International Association of Machinists and Aerospace Workers (IAM) had a collective bargaining agreement. Bert Bolding was the union steward. Plaintiff was a member of the union. Defendant Ritschel was manager of airport station operations of TWA. Defendant Furst was manager of customer service for TWA at the airport, and also the hearing officer in proceedings for discharge of employees under Article XI(b)(8) of the Collective Bargaining Agreement.

█ Since no answer was filed and no affidavits negated the allegations in the complaint, the facts alleged in plaintiff's complaint are not disputed. See, § 21–4–8, N.M.S.A.1953 (Repl.Vol. 4). Worley v. United States Borax and Chemical Corporation, 78 N.M. 112, 428 P.2d 651 (1967). Therefore, it is admitted that a claim for relief exists. We are only concerned with the defense in this case, i. e., that plaintiff was subject to the provisions of the Collective Bargaining Agreement and the defamatory statements of Ritschel and Furst were unqualifiedly privileged.

On August 16, 1970, at 10 p. m., Kantu, supervisor for Fred Harvey, came to Ritschel's office to report that he saw plaintiff and two other men take some beer and other things to a pickup. Ritschel investi-

gated. He went to the parked pickup and found several bags of ice cubes and two six packs of beer, Budweiser and Schlitz, but did not remove these items. He sent a subordinate to advise Bolding, the union steward, to meet him at the end of the shift.

Plaintiff testified that it was customary for management to consult with the union steward if management had some suspicion of a violation of the contract or company rules, and the union steward must be present when management intends to take some form of action.

At 11 p. m., when plaintiff's shift ended, he went to the parking lot and found Ritschel and Bolding talking in the presence of four or more men.

Ritschel interrogated plaintiff and after further discussion Ritschel advised plaintiff orally and in writing that he was discharged, and that he should attend a hearing. The trial court held that the defamatory statements made by Ritschel were unqualifiedly privileged because of Article XI(b)(1), supra.

█ It is obvious that plaintiff had no complaint or grievance prior to the time he was discharged, nor had he requested a hearing. Article XI(b)(1), supra, had no application to the question of an unqualified privilege.

The hearing took place on August 25, 1970, and Furst was the hearing officer.

On August 28, 1970, Furst wrote plaintiff a letter to confirm a hearing held on plaintiff's behalf concerning the charge against him of unauthorized possession of company property. It was Furst's decision that plaintiff's discharge would be upheld. Plaintiff testified that this letter was the only statement, either oral or written, which plaintiff interpreted as an accusation of stealing beer and ice. Furst's letter was written pursuant to Article XI(b)(8) of the Collective Bargaining Agreement which applies to "Discharge."

Article XI provides for a fair hearing before a designated representative of the

company, other than the one bringing the complaint against the employee. It further provides in part:

A discharge hearing will be held not later than five (5) days after .the employee and the Union are notified of the precise charges and a *written decision will be issued* within three (3) work days after the close of the hearing. . . . [Emphasis added]

On January 21, 1971, plaintiff's grievance was heard by appeal at the Step Three level. The parties were unable to agree at Step Three, and the case was deadlocked. On July 16, 1971, the appeal was taken to the System Board of Adjustment, created under § 204, Title II of the Railway Labor Act, as amended. Both TWA and the Union presented evidence in St. Louis, Missouri, and a decision of the Board of Adjustment in the matter of plaintiff's grievance was pending as of July 28, 1971.

· (a) *Defendant Furst*

The trial court held that Furst's letter of August 28, 1970, which constituted a disposition of plaintiff's grievance after a hearing was absolutely privileged. We agree.

In Stewart v. Ging, 64 N.M. 270, 273, 327 P.2d 333, 335 (1958), the court said:

Absolute immunity from responsibility without regard to purpose, motive or reasonableness of conduct is, and should be, confined to a very few rather well-recognized situations. Prosser on Torts § 94 (1941).

For example, absolute immunity does apply to defamatory matter in judicial pleadings, even if false and malicious, when the defamatory matter is reasonably related to the subject of inquiry. Stryker v. Barbers Super Markets, Inc., 81 N.M. 44, 462 P.2d 629 (Ct.App.1969).

An absolute or unqualified privilege means absolute immunity from liability for defamation. It "has been confined to very few situations where there is an obvious policy in favor of permitting complete freedom of expression, without any inquiry as to the defendant's motives." It is generally limited to judicial proceedings, legislative proceedings, executive communications, consent of the plaintiff, husband and wife, and political broadcasts. Prosser, Law of Torts, 4th Ed.1971, § 114. See also, Restatement of Torts, ch. 25, § 585 to 592 (1968), inclusive; Defamation, 69 Harvard L.Rev. 875 at 917 to 924.

The doctrine of absolute immunity was extended in General Motors Corporation v. Mendicki, 367 F.2d 66 (10th Cir. 1966), to cover arbitration of employer-employee grievances pursuant to a collective bargaining agreement between the employer and the union.

In *Mendicki,* supra, there were four steps to arrive at a decision. (1) The employee taking up the grievance with the foreman of the company for adjustment. (2)·If unsuccessful, the employee is represented by the local union shop committee. (3) If unsuccessful, an appeal is taken from the plant management decision to higher levels of union and management. And (4) *A hearing before the impartial Umpire.* Mendicki started a grievance under Step One. It was during Step Four that the claimed defamation occurred. The court said [p. 70]:

It is our conclusion that statements made either by representatives of management or by representatives of an employee *at a conference and bargaining session having for its purpose the adjustment of a grievance of the employee or other peaceable disposition of such grievance* are unqualifiedly privileged. [Emphasis added]

The reason given for absolute immunity was that statements clearly germane to the issues involved, if not accorded absolute immunity, would interfere with the national labor policy of the United States.

For comments on *Mendicki,* supra, see 15 Univ. of Kan.L.Rev. 553 (1967). Bostwick, the author, concluded [pp. 567, 568]:

The court apparently applied state defamation law, finding that state law

would grant an unqualified privilege to statements made during the course of a labor grievance proceeding. The court recognized that the national labor policy would be impaired if defamation remedies were awarded in the *Mendicki* case. Having arrived at this determination, the court held the statements to be "unqualifiedly privileged."

\*   \*   \*   \*   \*   \*

Considering the factual situation presented in *Mendicki*, the Tenth Circuit should have held that state defamation actions are absolutely barred as to statements made by participants during the course of a labor grievance proceedings. Only by such a decision could the court adequately have insured that the national labor policy, as defined by Congress, would be given the full play required by the Supreme Court.

*Mendicki*, supra, was followed by summary judgments granted in Corbin v. Washington Fire & Marine Insurance Co., 278 F.Supp. 393 (D.C.S.C.1968), aff. 398 F.2d 543 (4th Cir. 1968); Joftes v. Kaufman, 324 F.Supp. 660 (D.D.C.1971).

There is a conflict of authority. *Mendicki*, supra, was not followed in Bird v. Meadow Gold Products Corp., 60 Misc.2d 212, 302 N.Y.S.2d 701 (1969). It held that defamatory statements were a qualified privilege, but granted defendant a summary judgment because the statements made were a sincerely held opinion of the defendant. Maryland and New Jersey also held that the type of privilege involved is a qualified privilege. Henthorn v. Western Md. R.R. Co., 226 Md. 499, 174 A.2d 175 (1961), and by opinion, Jorgensen v. Pennsylvania R.R. Co., 25 N.J. 541, 138 A.2d 24 (1958), 72 A.L.R.2d 1415.

Mock v. Chicago, Rock Island & Pacific Railroad Co., 454 F.2d 131 (8th Cir. 1972), held that statements made in proceedings before *The National Railroad Adjustment Board* were absolutely privileged because the board was a quasi-judicial agency.

■ Should New Mexico adopt the doctrine of absolute immunity from liability for defamation which takes place during the course of labor-grievance-arbitration proceedings? We believe it should. This is a matter of first impression in New Mexico.

*Bostwick*, supra, stated:

The grievance proceeding under a collective bargaining agreement is quite similar to a judicial or quasi-judicial proceeding. The Supreme Court has stated that the grievance procedure is "an effort to erect a system of industrial self-government" in which "a new common law—the common law of a particular industry or of a particular plant" is fashioned and applied. The grievance procedure is merely an agreed upon substitute for legal action in a judicial forum and is actually quasi-judicial in nature.

■ The Furst letter of August 28, 1970, as a hearing officer, followed a hearing with both parties present and evidence heard. It was the Second Step in procedure for adjustment of grievances. It led ultimately to a hearing before the System Board of Adjustment. The Furst hearing can be placed in the category of a quasi-judicial proceeding. See, Chiordi v. Jernigan, 46 N.M. 396, 129 P.2d 640 (1942); dissenting opinion, State v. Mechem, 63 N.M. 250, 316 P.2d 1069 (1957). Being a quasi-judicial hearing, Furst's letter was unqualifiedly privileged. *Mock*, supra; Stryker v. Barbers Super Markets, Inc., supra.

■ In *Mendicki*, supra, the defamation occurred during Step Four in a hearing before an impartial umpire. In *Mock*, supra, defamation occurred during a hearing under Step Four before the National Railroad Adjustment Board. Do the same rules apply during a hearing under Step Two before a company hearing officer? We believe they do.

As the hearing officer, Furst was bound to comply with the provisions of the Collective Bargaining Agreement. The Collective Bargaining Agreement ordered

the decision to be presented in writing as a "peaceable disposition of such grievance." Furst's letter was "clearly germane to the issues involved." To fail in this respect would violate the agreement.

We conclude that Furst's defamatory statements were absolutely privileged.

### (b) Defendant Ritschel

■■ Ritschel's defamatory statements were made during consultation in the parking area with plaintiff and his union steward over suspicious circumstances related to plaintiff being in unauthorized possession of TWA property. It was an investigation. The event was not a complaint or grievance by plaintiff, but an investigation by Ritschel.

Ritschel relies on Article XI(b)(1), supra, which we held inapplicable. He also relies on Article XI(c)(4), which is a general provision under "Grievance Procedure." It reads in part:

> In meetings for the purpose of investigation of any matter which may eventuate in the application of discipline or dismissal, an employee will be entitled to Union representation, if he so desires.

This provision is for the protection of the employee. It is not one of the Steps in Grievance Procedure. It does not constitute a "conference and bargaining session having for its purpose the adjustment of a grievance or other peaceable disposition of such grievance." We do not agree with defendants that "the statements of Ritschel were an indispensable part of the grievance procedure." Ritschel had authority under Article XI(c)(4), supra, to suspend plaintiff "from the services of the company, pending a hearing" because he determined from information received from Kantu that the company's property was "seriously jeopardized."

At this state of the record, before answer is filed, Ritschel admits that he falsely and maliciously accused plaintiff of stealing ice and beer without justification. We find no authority which granted Ritschel absolute immunity from liability.

The trial court erred in holding that Ritschel's defamatory statements were absolutely privileged.

Defendants have raised the question of whether national labor policy preempts state defamation actions when the defamation occurs during the course of labor grievance arbitration proceedings. We do not reach this question, having held as to Furst that his letter was absolutely privileged and having held as to Ritschel that his alleged defamations did not occur during the procedure for settlement of labor grievances.

### (2) Other Torts Which Might be Sued for.

■ Plaintiff complains that the summary judgments were improper because his amended complaint encompasses other torts, such as malicious prosecution and abuse of process. Our answer is that the record does not show that this contention was raised in the trial court. It cannot be raised here for the first time. Perry v. Staver, 81 N.M. 766, 473 P.2d 380 (Ct. App.1970).

### (3) Plaintiff's Claim for Breach of Contract was Barred.

■ The trial court ruled that plaintiff David Neece had elected to pursue his remedies under the Collective Bargaining Agreement. Based on this ruling, the trial court dismissed plaintiff's second cause of action with prejudice for breach of contract by TWA because it was barred by the election of remedies under the Collective Bargaining Agreement.

Jones v. International Union of Operating Engineers, 72 N.M. 322, p. 327, 383 P.2d 571, p. 574 (1963), said:

> The general rule is, . . . that an individual employee must show that he has exhausted the grievance procedures provided by the agreement as a condition to his right to maintain an action in court.

*Jones*, supra, did not involve federal labor law, and is not controlling in this case.

The Collective Bargaining Agreement established a System Board of Adjustment in compliance with § 204, Title II of the Railway Labor Act. The Railway Labor Act was extended to cover every common carrier by air. 45 U.S.C.A. § 181. See, 45 U.S.C.A., § 184. In Andrews v. Louisville & Nashville R. Co., 406 U.S. 320, 92 S.Ct. 1562, 32 L.Ed.2d 95 (1972), a previous decision permitting an employee to commence in state court an action based on state law for breach of contract was overruled. The court said:

> A party who has litigated an issue before the Adjustment Board on the merits may not relitigate that issue in an independent judicial proceeding. [Cases cited] He is limited to the judicial review of the Board's proceedings that the Act itself provides. [Cases cited] In such a case the proceedings afforded by 45 U. S.C. Section 153 First (1), will be the only remedy available to the aggrieved party.

For judicial enforcement or review of decisions of the Adjustment Board, see 9 A.L.R.Fed. 533.

Plaintiff did litigate his claim for wrongful discharge before the System Board of Adjustment.

The partial summary judgment on this issue is affirmed.

(4) *Summary Judgment Prior to Completion of Discovery.*

 Plaintiff contends the motion for summary judgment should not lie prior to, (1) defendants' answers to interrogatories propounded by plaintiff to defendants, and (2) enforcement of the trial court's order that "defendants produce documents containing all statements of the parties relating hereto which have been reduced to writing and any and all other statements made by any agent, servant or employee of TWA, Inc."

The additional discovery desired by plaintiff would not affect this opinion on the limited issues in this case.

The partial summary judgment granted Ritschel and TWA on the first claim for relief is reversed. The remainder of the summary judgment is affirmed.

It is so ordered.

WOOD, C. J., and HENDLEY, J., concur.