Ronnie TURNER, Plaintiff-Appellant,

v.

GATEWAY TRANSPORTATION COMPANY, INC., and James Pullam, Defendants-Respondents.

No. 38422.

Missouri Court of Appeals, St. Louis District, Division Three.

July 11, 1978.

Shifrin, Treiman, Bamburg & Dempsey, David G. Dempsey, Clayton, for plaintiff-appellant.

Kortenhof & Ely, Joseph M. Kortenhof, Amy Rubin Reichman, St. Louis, for defendants-respondents.

GUNN, Presiding Judge.

Plaintiff-appellant sued defendants-respondents in libel based on a letter notifying him of his discharge from employment with defendant Gateway Transportation Company, Inc. A jury awarded plaintiff $5,000 compensatory damages and $50,001 punitive damages.[1] After the jury verdict, the trial court, finding that the procedure in sending the discharge letter was privileged and consented to by plaintiff, sustained defendants' joint motion for directed verdict filed at the close of the entire case and vacated the jury verdict. Plaintiff appeals alleging that the contents of the discharge letter constituted actionable libel and that the discharge letter was not within the protective aegis of privilege. We find that the procedures followed by defendants were consented to by plaintiff, and for that reason the discharge letter does not form a valid basis for plaintiff's libel action. We affirm the trial court's judgment.

Plaintiff was employed by Gateway in St. Louis as a local truck driver. Pullam was the St. Louis terminal manager for Gateway. On May 29, 1973, plaintiff delivered a load of freight to the C.E.S. Truck Line terminal. Shortly thereafter, Pullam was informed by the safety supervisor for Triangle Express, another truck line, that the truck unit driven by plaintiff was involved in an accident with a Triangle Express unit while at the C.E.S. terminal. Later in the day, Pullam approached plaintiff, reproved him for the accident and advised him that he was discharged for failing to report the accident. The following day, May 30, plaintiff received a letter signed by Pullam indicating that copies had been sent to the local union representative, the Motor Carrier Council and appropriate administrative departments of Gateway. The letter, in pertinent part, read:

> "You are discharged from Gateway Transportation Company, Inc., effective, May 29, 1973 for failure to report an accident that the employee is aware of. On May 29, 1973 at approximately 10:30 A.M., while pulling out of C.E.S. Truck Line, your unit struck a Triangle Express tractor, damaging the left door of the tractor. You failed to report the accident in accordance with the Contract and Company policy.
>
> Enclosed find Draft # B–20498 covering all monies due you.
>
> This discharge is in accordance with Article 46 of the Central States Area Local Cartage Supplemental Agreement."

Pullam had based the dismissal on a statement of a witness who saw plaintiff's truck strike the Triangle Express unit and noticed that plaintiff had stopped to look at the damage and had driven off. Under the union contract, failure to report a known accident would be cause for dismissal.

Also on May 30, plaintiff went to Pullam with his union business agent and advised him that a grievance would be filed. The record does not indicate whether the business agent advised that the grievance would be filed before or after plaintiff had received the discharge letter. Later, the witness to the accident changed the substance of his statement by stating that plaintiff had not appeared to notice damage from the accident. As a result, plaintiff was reinstated but not paid for the time between the discharge and the reinstatement. The consequence of a subsequent grievance on the pay issue was to award plaintiff for the lost pay.

---

1. The judgment was for $5,000 compensatory damages against both defendants and punitive damages of $1.00 against defendant Pullam and $50,000 against defendant Gateway.

Plaintiff filed this action in libel charging that the statements in the discharge letter were libelous per se because they disparaged his trustworthiness and discredited his ability as a truck driver; that by sending a copy of the letter to the Motor Carrier Council of St. Louis, the libel was unlawfully published.

■ Viewing the evidence in the light most favorable to the plaintiff, we find that the trial court was justified in finding that the discharge letter was sent to the Motor Carrier Council under procedures consented to by plaintiff. When an individual consents to the publication of a statement, it is not actionable and is absolutely privileged. *Hellesen v. Knaus Truck Lines, Inc.*, 370 S.W.2d 341 (Mo. 1963). We therefore need make no determination as to whether the statements contained in the letter were libelous.

The Motor Carrier Council of St. Louis, Inc. is the labor bargaining and grievance handling arm for Gateway, as well as many other motor carriers operating in St. Louis. Plaintiff called Mitchell Campbell, manager and executive secretary of the Motor Carrier Council, as his witness. It was Campbell's testimony that the grievance procedures contained in the National Master Freight Agreement—to which Gateway and plaintiff's union were parties—required the grievance committee to devise its own rules of procedure. The procedure created provides that prior to the actual grievance being filed, the employer—in this case, Gateway—was to send a copy of any discharge letter to the Motor Carrier Council. Campbell testified in this regard as follows:

"Q. But, in any event, the proper procedure is for it [the Motor Carrier Council] to keep a—get a copy of the [discharge] letter.
A. [Campbell] Yes.
Q. Sometimes it isn't followed.
A. Right.
Q. But it's supposed to be followed.
A. Most of them [the Carriers] do follow it.

Q. That's pursuant to the procedures worked out by the unions and by the companies, is that correct?
A. That's correct.
Q. Your getting a copy of this was part of the procedure worked out by the unions and the companies.
A. Right."

■ Thus, under the procedures arranged pursuant to the labor agreement between the plaintiff's union and the motor carriers, the Motor Carrier Council was to receive a copy of the discharge letters precisely as occurred here. It is inconsequential whether a grievance had actually been filed prior to the receipt of the letter by the Motor Carrier Council. When a letter of discharge was sent to an employee—whether before or after formal grievance procedures were initiated—the Motor Carrier Council was to receive a copy of that letter.[2] The testimony of Campbell was not contradicted, and as he appeared as plaintiff's witness, his testimony, including that elicited on cross-examination, is binding upon plaintiff. *Zabol v. Lasky*, 555 S.W.2d 299 (Mo. banc 1977); *Tri-Continental Leasing Co. v. Neidhardt*, 540 S.W.2d 210 (Mo.App.1976).

■ During his testimony, plaintiff admitted that he was bound by his union contract and the procedures provided for in the contract. But whether admitted or not, plaintiff was bound by the procedures which had been worked out by his union and the employer, including the sending of the discharge letter to the Motor Carrier Council. *Arbuckle v. Fruehauf Trailer Co.*, 372 S.W.2d 470 (Mo.App.1963). The effect is that plaintiff consented to the procedures followed in this case, and the contents of the discharge letter properly sent pursuant to those procedures were absolutely privileged. *Hellersen v. Knaus Truck Lines, Inc.*, supra, is directly on point in this regard. The trial court was correct in directing a verdict in defendants' favor.

2. We note that in notifying the Motor Carrier Council by letter that a formal grievance was being filed on behalf of plaintiff, the union repeated the charge levied of failure to report an accident, which allegedly formed the basis of plaintiff's libel action.

We need not consider other points raised by plaintiff.

Judgment affirmed.

WEIER and KELLY, JJ., concur.