**Elvin E. BARCHERS,
Plaintiff-Respondent,**

v.

**MISSOURI PACIFIC RAILROAD COMPANY, Defendant-Appellant.**

**No. 47118.**

Missouri Court of Appeals,
Eastern District,
Division Two.

March 13, 1984.

Motion for Rehearing or Transfer Denied
April 20, 1984.

Kim Roger Luther, St. Louis, for defendant-appellant.

Phillip T. Ayers, St. Ann, for plaintiff-respondent.

PUDLOWSKI, Judge.

Defendant-appellant, Missouri Pacific Railroad Company, appeals from a judgment for plaintiff-respondent, Elvin E. Barchers, on his claim for libel. The jury awarded $320 actual and $16,275 punitive damages. We reverse.

Respondent, an employee of appellant, was discovered by his supervisors sleeping on the job on September 23, 1974. The charge of "sleeping on the job" was investigated pursuant to an agreement between appellant and respondent's union, the United Transportation Union. Subsequently, respondent was discharged.

Thereupon, the union appealed the decision to terminate respondent to a Public Law Board established under an agreement pursuant to the Railway Labor Act. 45 U.S.C. § 151 *et seq.* (1976). Appellant was represented by Eugene Margason from appellant's labor relations department. Respondent was represented by Kenneth Levin, senior vice president of the union, and Irving Newcomb, local chairman at the time of the hearing. The independent arbitrator whom the parties selected to hear the case was John Criswell.

At the hearing, appellant introduced a letter sent by respondent's immediate supervisor to appellant's general manager. This letter formed the basis of respondent's libel action and reads in pertinent part as follows:

> In addition to information contained in the investigation and write-up from Trainmaster W.E. Richmond, these two gentlemen had been a problem for quite some time in that it was necessary to counsel this crew quite frequently for their failure to perform work as requested by General Mills. They had a tendency to do the work to suit themselves, regardless of how General Mills requested their plan to be set up. They continually argued with the foreman at General Mills and at least three times a week I would receive a telephone call from General Mills' Traffic Manager in regards to these two gentlemen.

Although neither General Mills or us were able to catch or prove it, we feel these gentlemen were stealing flour from the mill. Since their dismissal, General Mills tells me they have had no problems.

I have run across some lousy and rotten people in my time and these two rank close to the top as being the worst I have seen. I would be very hopeful that we would not be required to return them to service as they present a very poor image of the Missouri Pacific.

The arbitrator concluded that the letter, introduced by appellant, established the fact that appellant had prejudged respondent's case. As a result, the dismissal was tainted. Reinstatement was ordered, but, because of the serious nature of the violation, no back pay was awarded. Respondent then instituted this suit claiming the introduction of the letter at the hearing was libel.

█ Appellant first claims that any state remedy in this dispute is preempted by the Railway Labor Act, 45 U.S.C. § 151 *et seq.* This act provides for the submission of all disputes "growing out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules on working conditions" to arbitration by either the National Railroad Adjustment Board, established by the act, or a Public Law Board, created by the railroad and the unions. 45 U.S.C. § 153 First (i). We agree.

Simply viewed, this case is within the act. The dispute "grew out" of a grievance. *See Carson v. Southern Ry. Co.,* 494 F.Supp. 1104, 1112 (D.S.C.1979). It occurred as a result of the procedure created by the agreement and the act to resolve a grievance. As a result, this dispute is governed by the procedures of the Railway Labor Act and all other relief is barred. *Magnuson v. Burlington Northern, Inc.,* 576 F.2d 1367, 1369–70 (9th Cir.1978).

However, respondent contends that in certain areas some state laws are not preempted and libel is one of those areas. In support of his argument, respondent cites

*Linn v. United Plant Guard Workers of America, Loc. 114,* 383 U.S. 53, 86 S.Ct. 657, 15 L.Ed.2d 582 (1966). In *Linn,* a case of libel arising in a union representation election, the United States Supreme Court applied the test announced in *San Diego Building Trades Council v. Garmon,* 359 U.S. 236, 243–45, 79 S.Ct. 773, 778–79, 3 L.Ed.2d 775 (1959). This test allows state regulation which affects activity arguably subject to the National Labor Relations Act, 29 U.S.C. § 151 *et seq.* (1976), to survive only if the activity covered is peripheral to that act, or "touched interests so deeply rooted in local feeling and responsibility" as to require explicit congressional direction to preempt state rule. *Farmer v. United Broh. of C. & J. of America, Local 24,* 430 U.S. 290, 296–97, 97 S.Ct. 1056, 1061–62, 51 L.Ed.2d 338 (1977).

Libel was found to meet the test in *Linn.* The court held that libel creates an overriding interest in the state and further that recovery created little risk of interference with the jurisdiction of the National Labor Relations Board because the inquiry of that Board would have a focus different from that of the court. *Linn,* 383 U.S. at 61–63, 86 S.Ct. at 662–663.

Here, the balance is struck differently. *Linn* dealt with the application of the National Labor Relations Act. While the state's interest in preventing the evils of libel remains, the Railway Labor Act *forces* the arbitration of grievances. *Andrews v. Louisville and N.R.R.,* 406 U.S. 320, 92 S.Ct. 1562, 32 L.Ed.2d 95 (1972). The mandatory arbitration provisions of the Railway Labor Act were created "to provide for the prompt and orderly settlement of all disputes growing out of grievances, or out of the interpretation or application of agreements covering rates of pay, rules, or working conditions." 45 U.S.C. § 151a(5). This libel, occurring in the process of adjusting a grievance, depends "on a matrix of facts which are inextricably intertwined with the grievance machinery of the collective bargaining agreement of the RLA," *Magnuson v. Burlington Northern, Inc.,* 576 F.2d at 1369. It bears a substantial

**238**

relationship to the agreement and is thus, exclusively subject to the procedures of the Railway Labor Act. *Id.* at 1369–70.

 Even if there were no preemption here, the verdict would still not stand because appellant was absolutely privileged to publish the statement which constituted the alleged libel. Respondent concedes he consented to the hearing. Furthermore, a review of the transcript reveals that respondent, through Mr. Levin, requested that the letter be made part of the record. Mr. Criswell, the arbitrator, testified:

Q. Are you absolutely sure that Mr. Levin brought up this letter of April 2nd, 197[5]?

A. This letter only benefited Mr. Levin. I remember that he asked for it, he was *insistent* that I consider it, that it be presented. This cuts very heavily against the carrier, and they did not want to bring it up and they fought ever mentioning it, and were not favorably disposed for it becoming part of the record.

Having so consented, respondent waived any rights he may have had. *Turner v. Gateway Transportation Company, Inc.*, 569 S.W.2d 358, 360 (Mo.App.1978).

In addition, statements made during the proceedings of a judicial or quasi judicial body are absolutely privileged if they are relevant to the issues before the body. *Ramacciotti v. Zinn*, 550 S.W.2d 217, 224 (Mo.App.1977). The National Railroad Adjustment Board is just such a body. *Mock v. Chicago, Rock Island and Pacific Railroad Company*, 454 F.2d 131, 134–35 (8th Cir.1972). Public Law Boards were established by the same act, and have the same duties, as the National Board. Their decisions are subject to the same narrow scope of review. 45 U.S.C. § 153. As they share the same quasi judicial attributes, they are similarly quasi judicial bodies. *See also Reece v. Kantu*, 84 N.M. 700, 507 P.2d 447, 453 (N.M.Ct.App.1973).

As the Public Law Board is a quasi judicial body, statements made during its proceedings are absolutely privileged if

they are relevant to an issue before the board. Relevance is liberally construed, W. Prosser, *Torts* § 114 (1971 ed), and is a question of law for the court. The letter complained of was relevant to the issue of the severity of the discipline imposed. It was dispositive of the case. The argument that it was irrelevant is untenable.

Reversed.

CRIST, P.J., and SIMON, J., concur.