STEPHEN L. KLOCH, APPELLANT AND CROSS-APPELLEE, V. EDWARD G. RATCLIFFE, APPELLEE AND CROSS-APPELLANT.

375 N.W.2d 916

Filed November 8, 1985. No. 84-642.

Herbert M. Sampson III of Sampson, Forney & Dobrovolny, for appellant.

Walter R. Metz, Jr., of Metz & Metz, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, and GRANT, JJ., and COLWELL, D.J., Retired.

BOSLAUGH, J.

This was an action for slander in which the jury returned a verdict for the plaintiff in the amount of $375,000. The defendant's motion for judgment notwithstanding the verdict was sustained and the petition dismissed. The plaintiff has appealed. By a cross-appeal the defendant submits additional reasons for affirming the judgment of the district court.

On April 18, 1982, the plaintiff, Stephen L. Kloch, was employed as a locomotive engineer by the Burlington Northern railroad. He was returning to Alliance, Nebraska, from Edgemont, South Dakota, as the engineer on a freight train which entered the Alliance yard at about 3 a.m. According to the yard office, the plaintiff's train arrived in the yard at 3:02 a.m.

At about the same time, the defendant, Edward G. Ratcliffe, a road foreman employed by the railroad, was returning to Alliance from Crawford, Nebraska, by automobile. One of the duties of a road foreman is to run "efficiency tests" on locomotive engineers employed by the railroad. The defendant had been performing efficiency tests on engineers in the Crawford area.

The defendant was driving on a highway that was alongside

the track on which the plaintiff's train was operating. When the defendant observed the train approaching Alliance, he decided to run an efficiency test known as a final terminal delay or "FTD" test on the engineer operating that train. After the train entered the yard, the defendant went to the yard office.

Under the provisions of the operating agreement between trainmen and the railroad, trainmen receive penalty pay (final terminal delay) if the time required to "tie up" after their train enters the yard exceeds 30 minutes. This pay is in addition to their regular pay for "trip miles" but is paid only if the 30-minute limit is exceeded.

The procedure to "tie up" consists of filling out a timecard and signing the register in the yard office. The railroad considers 5 minutes a reasonable time for this activity. The register is the official record of when a trainman's paid day ends and indicates that he has completed all of his duties and is off duty.

After entering the yard office the defendant went to the tower where he could observe the activity in the yard. He saw the plaintiff arrive at the yard office at 3:29 a.m. by "taxi," a conveyance provided by the railroad to bring crews to and from the yard office. According to the defendant, the plaintiff did not enter the yard office until 3:34 a.m. Before entering the yard office the plaintiff had walked over to his pickup and engaged in conversation with other trainmen in the area.

After the plaintiff had entered the yard office, the defendant went to the crew caller's office, which is adjacent to and separated from the register room by a window. After the plaintiff entered the register room, the defendant had one of the crew callers on duty, Joanne Husman, point out the plaintiff. The defendant then compared his watch with the standard clock which was located in the operator's room adjacent to the crew caller's office. The defendant's watch was within 30 seconds of the time shown by the standard clock, which is the permitted variance.

The defendant watched the plaintiff sign the register and then leave the register room. The defendant examined the register and found that the plaintiff had entered 4 a.m. in the register. After the plaintiff had left the building, the defendant

showed the register to Husman. It was then 3:55 a.m. The defendant noted all of the relevant times in a notebook which he kept for that purpose.

The defendant then attempted to locate the plaintiff outside the yard office, but the plaintiff had left the yard.

The conductor of the train and the other "head end" crew members had recorded 3:40 a.m. as their "tie up" time.

On the following day the defendant reported the results of the test to his superior. It was determined that there should be an "investigation," as provided for in the operating agreement. A hearing officer was appointed and notice of the hearing served on the plaintiff. The defendant testified at the hearing held on April 30, 1982, that he saw the plaintiff leave the railroad premises at 3:54 a.m., after he had signed out on the federal train register showing his tieup time to be 4 a.m. The defendant's testimony at the hearing is the basis for this action.

Following the hearing, the plaintiff was found to have violated the rules of the railroad and was discharged on May 28, 1982. The plaintiff appealed his discharge under the provisions of the Railway Labor Act, 45 U.S.C. §§ 151 et seq. (1982). The appeal was in the third stage of the appeal process on December 1, 1982, when the plaintiff was reinstated on a leniency basis without back pay.

This action was filed on January 3, 1983.

In sustaining the motion for judgment notwithstanding the verdict, the trial court found that the action was preempted by federal law, that the defendant's testimony was absolutely privileged, and that there was insufficient evidence of malice to sustain an action if the privilege was only a qualified privilege. The plaintiff's assignments of error all relate to these findings.

The plaintiff's claim rests solely upon the statements made by the defendant at the hearing, which was provided for in the operating agreement, and at which the defendant was required to testify. In deciding this case we consider only those matters relating to whether the defendant's statements were privileged, the extent of the privilege, and whether there was evidence of malice.

With respect to the matter of privilege, the trial court found that the statements made at the hearing were absolutely

privileged.

The alleged defamatory statements involved in this case consist of the defendant's answers to four questions asked him by the hearing officer at the April 30 hearing. The officer asked: (1) "Was he [Kloch] claiming then time for payment for which he was not entitled?" Ratcliffe responded, "Yes, sir." (2) "Would that be considered theft?" Ratcliffe responded, "Yes, sir." (3) "Is claiming time for pay which is unsubstantiated or unearned theft?" Ratcliffe responded, "Yes, sir." (4) "Did Mr. Kloch fail to give a factual report concerning his tie up time in the early morning hours of April 18th?" Ratcliffe responded, "Yes, sir." These statements were clearly relevant to the subject of the hearing.

The only persons present at the hearing were the hearing officer, a stenographer, the defendant, the plaintiff, and a union representative appearing on the plaintiff's behalf.

The rule of absolute privilege applies not only to judicial proceedings but to quasi-judicial proceedings as well. *Sinnett v. Albert*, 188 Neb. 176, 195 N.W.2d 506 (1972); *Shumway v. Warrick*, 108 Neb. 652, 189 N.W. 301 (1922). The hearing or investigation at which the alleged defamatory statements were made is an arbitration proceeding which is similar to a judicial or quasi-judicial proceeding.

In *Neece v. Kantu*, 84 N.M. 700, 705-07, 507 P.2d 447, 452-54 (1973), *cert. denied* 84 N.M. 696, 507 P.2d 443, the Court of Appeals of New Mexico observed:

> The doctrine of absolute immunity was extended in General Motors Corporation v. Mendicki, 367 F.2d 66 (10th Cir. 1966), to cover arbitration of employer-employee grievances pursuant to a collective bargaining agreement between the employer and the union.

> In *Mendicki*, supra, there were four steps to arrive at a decision. (1) The employee taking up the grievance with the foreman of the company for adjustment. (2) If unsuccessful, the employee is represented by the local union shop committee. (3) If unsuccessful, an appeal is taken from the plant management decision to higher levels of union and management. And (4) *A hearing before the*

*impartial Umpire.* Mendicki started a grievance under Step One. It was during Step Four that the claimed defamation occurred. The court said [p. 70]:

"It is our conclusion that statements made either by representatives of management or by representatives of an employee *at a conference and bargaining session having for its purpose the adjustment of a grievance of the employee or other peaceable disposition of such grievance* are unqualifiedly privileged. [Emphasis added]"

The reason given for absolute immunity was that statements clearly germane to the issues involved, if not accorded absolute immunity, would interfere with the national labor policy of the United States.

For comments on *Mendicki*, supra, see 15 Univ. of Kan.L.Rev. 553 (1967). Bostwick, the author, concluded [pp. 567, 568]:

"The court apparently applied state defamation law, finding that state law would grant an unqualified privilege to statements made during the course of a labor grievance proceeding. The court recognized that the national labor policy would be impaired if defamation remedies were awarded in the *Mendicki* case. Having arrived at this determination, the court held the statements to be 'unqualifiedly privileged.'

\*     \*     \*     \*     \*     \*

"Considering the factual situation presented in *Mendicki*, the Tenth Circuit should have held that state defamation actions are absolutely barred as to statements made by participants during the course of a labor grievance proceedings. Only by such a decision could the court adequately have insured that the national labor policy, as defined by Congress, would be given the full play required by the Supreme Court."

*Mendicki*, supra, was followed by summary judgments granted in Corbin v. Washington Fire & Marine Insurance Co., 278 F.Supp. 393 (D.C.S.C.1968), aff. 398 F.2d 543 (4th Cir. 1968); Joftes v. Kaufman, 324 F.Supp. 660 (D.D.C.1971).

There is a conflict of authority. *Mendicki*, supra, was

not followed in Bird v. Meadow Gold Products Corp., 60 Misc.2d 212, 302 N.Y.S.2d 701 (1969). It held that defamatory statements were a qualified privilege, but granted defendant a summary judgment because the statements made were a sincerely held opinion of the defendant. Maryland and New Jersey also held that the type of privilege involved is a qualified privilege. Henthorn v. Western Md. R.R. Co., 226 Md. 499, 174 A.2d 175 (1961), and by opinion, Jorgensen v. Pennsylvania R.R. Co., 25 N.J. 541, 138 A.2d 24 (1958), 72 A.L.R.2d 1415.

Mock v. Chicago, Rock Island & Pacific Railroad Co., 454 F.2d 131 (8th Cir. 1972), held that statements made in proceedings before *The National Railroad Adjustment Board* were absolutely privileged because the board was a quasi-judicial agency.

Should New Mexico adopt the doctrine of absolute immunity from liability for defamation which takes place during the course of labor-grievance-arbitration proceedings? We believe it should. This is a matter of first impression in New Mexico.

*Bostwick,* supra, stated:

"The grievance proceeding under a collective bargaining agreement is quite similar to a judicial or quasi-judicial proceeding. The Supreme Court has stated that the grievance procedure is 'an effort to erect a system of industrial self-government' in which 'a new common law—the common law of a particular industry or of a particular plant' is fashioned and applied. The grievance procedure is merely an agreed upon substitute for legal action in a judicial forum and is actually quasi-judicial in nature."

The Furst letter of August 28, 1970, as a hearing officer, followed a hearing with both parties present and evidence heard. It was the Second Step in procedure for adjustment of grievances. It led ultimately to a hearing before the System Board of Adjustment. The Furst hearing can be placed in the category of a quasi-judicial proceeding. See, Chiordi v. Jernigan, 46 N.M. 396, 129 P.2d 640 (1942);

dissenting opinion, State v. Mechem, 63 N.M. 250, 316 P.2d 1069 (1957). Being a quasi-judicial hearing, Furst's letter was unqualifiedly privileged. *Mock*, supra; Stryker v. Barbers Super Markets, Inc., supra.

In *Mendicki*, supra, the defamation occurred during Step Four in a hearing before an impartial umpire. In *Mock*, supra, defamation occurred during a hearing under Step Four before the National Railroad Adjustment Board. Do the same rules apply during a hearing under Step Two before a company hearing officer? We believe they do.

As the hearing officer, Furst was bound to comply with the provisions of the Collective Bargaining Agreement. The Collective Bargaining Agreement ordered the decision to be presented in writing as a "peaceable disposition of such grievance." Furst's letter was "clearly germane to the issues involved." To fail in this respect would violate the agreement.

We conclude that Furst's defamatory statements were absolutely privileged.

Other cases which have reached a similar result are: *Sturdivant v. Seabord Service System, Ltd.*, 459 A.2d 1058 (D.C. App. 1983); *Rougeau v. Firestone Tire and Rubber Company*, 274 So. 2d 454 (La. App. 1973); *DeLuca v. Reader et al.*, 227 Pa. Super. 392, 323 A.2d 309 (1974); *Turner v. Gateway Transp. Co., Inc.*, 569 S.W.2d 358 (Mo. App. 1978).

The plaintiff concedes that at least a qualified privilege attached to the statements of the defendant. If only a qualified privilege existed, the plaintiff still could not recover because there was no evidence of malice. Where a qualified privilege exists, there can be no recovery without proof of malice. *Bartels v. Retail Credit Co.*, 185 Neb. 304, 175 N.W.2d 292 (1970).

A communication is privileged if made bona fide by one who has an interest in the subject matter to one who also has an interest in it or stands in such relation that it is a reasonable duty, or is proper, for the writer to give the information. *Hall v. Rice*, 117 Neb. 813, 223 N.W. 4 (1929) (citing *Wise v. Brotherhood of Locomotive F. and E.*, 252 F. 961 (8th Cir. 1918)); *Dangberg v. Sears, Roebuck & Co.*, 198 Neb. 234, 252

N.W.2d 168 (1977).

The existence of even a qualified privilege places the controversy within the rule stated in *Linn v. Plant Guard Workers*, 383 U.S. 53, 86 S. Ct. 657, 15 L. Ed. 2d 582 (1966).

In *Linn* the Court attempted to accommodate both the federal interest in uniform regulation of labor relations and the state's interest in protecting its citizens. The Court held that it was necessary to "limit the availability of state remedies for libel to those instances in which the complainant can show that the defamatory statements were circulated with malice and caused him damage." *Linn* at 64-65. The Court, by analogy, adopted the definition of malice stated in *New York Times Co. v. Sullivan*, 376 U.S. 254, 84 S. Ct. 710, 11 L. Ed. 2d 686 (1964), under which a plaintiff is not allowed recovery absent a showing that the defamatory statements were published with knowledge of their falsity or with reckless disregard as to whether they were true or false.

The trial court relied upon this standard in granting defendant's motion for judgment notwithstanding the verdict. Although the plaintiff alleged that the defendant had "falsely and maliciously stated that the Plaintiff was a thief by attempting to steal from Burlington Northern, Inc.," the evidence does not support the allegation of malice.

It is the defendant's knowledge or a reckless disregard of the truth or falsity of his statements on which the plaintiff's case rests.

The plaintiff, in his brief, contends that the evidence shows certain facts which, when added together, support his allegation. The plaintiff relies upon the following facts: "The Defendant saw the caboose crew show up at the yard office at 3:30 A.M. The Defendant saw Steve Kloch show up at 3:35 A.M. The defendant did not watch the other crew members check out. The Defendant was only interested in checking the time of Steve Kloch." Brief for Appellant at 30. The plaintiff then concludes that "[t]he defendant published statements about Steve Kloch with knowledge of their falsity." *Id*. The reason the defendant was "waiting" for the plaintiff was because the plaintiff was the subject of the efficiency, or FTD, test.

The U.S. Supreme Court has held that "[i]nstructions which permit a jury to impose liability on the basis of the defendant's hatred, spite, ill will, or desire to injure are 'clearly impermissible.' [Citation omitted.] '[I]ll will toward the plaintiff, or bad motives, are not elements of the *New York Times* standard.' [Citations omitted.]" *Letter Carriers v. Austin,* 418 U.S. 264, 281, 94 S. Ct. 2770, 41 L. Ed. 2d 745 (1974). The plaintiff cannot recover absent a showing of actual knowledge or reckless disregard of the falsity of the statements made.

There is no evidence that the defendant knew that his statements were false or that he made them with reckless disregard for their truth or falsity. The defendant took special precautions to ensure that his information was correct. He compared his watch with the standard clock and had an independent witness, Husman, observe the plaintiff and read the entry made by the plaintiff in the register. The only evidence which disputes the correctness of the defendant's statements is evidence to the effect that the plaintiff left the yard office at 4 a.m. This falls short of proof that the defendant *knew* his statements were false or that he made them with reckless disregard for their truth or falsity.

It is unnecessary to consider any of the issues raised in the cross-appeal.

The judgment of the district court is affirmed.

AFFIRMED.

GRANT, J., concurring.

I concur in the result reached in the opinion of the majority, but on the second ground discussed. I believe that defendant had a qualified, rather than an absolute, privilege in his actions which were undertaken in his employment as a road foreman with the Burlington Northern railroad. *Hall v. Rice,* 117 Neb. 813, 223 N.W. 4 (1929); *Dangberg v. Sears, Roebuck & Co.,* 198 Neb. 234, 252 N.W.2d 168 (1977). Since defendant had such a qualified privilege, but the evidence showed, as a matter of law, that defendant was not guilty of malice toward plaintiff, I would affirm on that ground.